**SO ORDERED.**

**SIGNED this 03 day of December, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

**ROBERT V. RODGERS,**

    Debtor.

CASE NO. 09-09124-8-JRL
Chapter 13

**ROBERT V. RODGERS,**

    Plaintiff,

vs.

**PREFERRED CAROLINA REALTY, INC.,
JAMES E. ALLEN, JR., JIM ALLEN GROUP,
INC., HARRY JAMES THORPE, RANDALL
EICHORN, LISA EICHORN, W. SIDNEY
ALDRIDGE, and NICHOLLS & CRAMPTON,
P.A.,**

    Defendants.

ADVERSARY PROCEEDING
NO. 10-00171-8-JRL

## ORDER

This matter came before the court on certain defendants' motion to dismiss and motion for judgment on the pleadings. A hearing was held on November 8, 2010, in Raleigh, North Carolina. Defendants Preferred Carolinas Realty, Inc. ("PCR"), James E. Allen, Jr., ("Allen"), Jim Allen Group, Inc., and Harry James Thorpe ("Thorpe") move to dismiss and award judgment

on the pleadings in their favor on the allegations of gross negligence, willful and wanton conduct, fraud, constructive fraud, and unfair and deceptive trade practices. Defendants also request this court to enforce the settlement agreement between plaintiff and these defendants in reliance on the state court orders enforcing this agreement.

## JURISDICTION

This court has jurisdiction over the parties and the subject matter of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.

## STATEMENT OF FACTS

1. In December 2005, Randall and Lisa Eichorn ("the Eichorns") sought to purchase a new home.

2. The Eichorns entered into an exclusive agency relationship with defendants PCR and Allen to represent them as buyers in their search for a new home.

3. The agreement further required PCR to disclose to the Eichorns all material facts related to any property they were to contract to purchase, including facts related to the transaction.

4. On or about December 8, 2005, defendants Thorpe and Allen, agents for PCR, showed the Eichorns property located at 7409 Oriole Drive, Wake Forest, North Carolina ("the property").

5. PCR represented to the Eichorns that the property was owned by Toth Building Company, who was performing construction on the property.

6. Rodgers hired Brandon Toth ("Toth") to oversee the construction of homes to be built on the property.

7. Rodgers was the actual owner of the property–not Toth Building as represented to the Eichorns by PCR.

8. The Eichorns, through PCR, entered into negotiations with Toth and Toth Building Company for the purchase of the property and the home to be constructed on the property.

9. On or about December 8, 2005, PCR presented a written contract for the purchase of the property to the Eichorns and for the construction of a home on the property by Toth Building. The parties signed the contract.

10. Rodgers did not authorize Toth and/or Toth Building to execute the contract.

11. Unbeknownst to the Eichorns, PCR modified the contract by "whiting out" the name of the seller, Toth Building, and replacing it with Rodgers' name.

12. The contract provided for a purchase price of $502,500.00 and a closing date of April 14, 2006.

13. At this time, Rodgers had no knowledge of the contract, nor did PCR inform Rodgers of the sale contract.

14. In late December 2005, Toth informed Rodgers that there was an offer to purchase the property for $502,500.00.

15. Over the next few months, the parties discussed and negotiated additional construction on the property.

16. In October 2006, the Eichorns learned that Rodgers was the actual owner of the property. The Eichorns agreed to modify the contract to reflect Rodgers' true ownership.

17. Around that time, Rodgers notified PCR that if the Eichorns did not contact him within two weeks, he would find a new buyer for the property.

18. Instead of closing on the sale of the property with the Eichorns, Rodgers put the property back on the market through PCR.

19. In early November 2006, the Eichorns, their retained counsel W. Sidney Aldridge of Nicholls & Crampton, P.A., Toth, and Allen met to finalize and execute an offer to purchase and contract for Rodgers' review.

20. The Eichorns informed Rodgers that if negotiations failed, the Eichorns would file a Notice of Lis Pendens against the property.

21. In early December 2006, Rodgers discovered his forged signature on the Offer to Purchase and Contract while reviewing the property's file.

22. Rodgers also discovered that the contract contained his forged initials and whited-out terms, and that the "new" legible terms appeared to be the same as the contract executed by Toth as Seller of the property in December 2005.

23. In January 2007, Rodgers informed the Eichorns that he had not accepted their offer, nor had he executed a contract for the sale of the property to them.

24. On March 12, 2007, the Eichorns filed a Notice of Lis Pendens against the property.

25. On July 12, 2007, the Eichorns closed on the sale of their then-current home.

26. On July 13, 2007, the Eichorns expected to move into their new home on the property; however, the house was not completed.

27. As a result of the Notice of Lis Pendens, Rodgers has been unable to sell the property for its market value and has incurred construction loan payments and other damages.

## PROCEDURAL HISTORY

1. On April 2, 2007, the Eichorns filed a complaint against Rodgers, PCR, Allen, Rodgers' business partner, Toth, and Toth Building Company, identified as Eichorn v. Rodgers, et al, Wake Co. Superior Court file number 07-CVS-3902.

2. In their complaint, the Eichorns alleged causes of action for: breach of contract, breach of fiduciary duty, constructive fraud, misrepresentation, breach of broker agreements, breach of the reasonable standard of care of real estate brokers, concealment of material facts, and punitive damages.

3. On August 31, 2007, Rodgers filed an amended answer, counterclaims and crossclaims.

4. Rodgers asserted counterclaims against the Eichorns for unjust enrichment and breach of duty of good faith and fair dealing.

5. Rodgers asserted crossclaims against Allen and PCR for negligence and against Toth and Toth Building Company for conversion.

6. On March 6, 2008, PCR and Allen filed crossclaims against Rodgers and Toth for breach of contract, contractual indemnity, and breach of duty of good faith and fair dealing.

7. On February 12, 2008, the state court ordered all parties to attend a mediated settlement conference.

8. On May 1, 2008, the parties entered into a settlement agreement.

9. The terms of the settlement agreement were as follows:

      a. PCR and Allen agreed to pay Rodgers $35,000.00 and waive any claim for a commission on the sale of the property.

      b. The Eichorns agreed to purchase the property for $425,000.00 from Rodgers, subject to improvements made to the property and the transfer of clear title and with a closing date set for sixty days following the agreement.

      c. Toth and Toth Building Company agreed to pay $15,000.00 to Rodgers.

      d. All parties also agreed to file voluntary dismissals of all claims and counterclaims with prejudice and to execute a mutual release.

10. On May 6, 2008, Rodgers' attorney notified the Eichorns, PCR, Allen and Toth that Rodgers did not want to settle the matter according to the terms of the agreement.

11. On May 8 and May 9, 2008, the Eichorns, PCR, and Allen each filed motions to compel compliance with and enforce the settlement agreement.

12. On July 3, 2008, the state superior court ordered Rodgers to comply with the settlement agreement ("the 2008 Order"). The 2008 Order incorporated the settlement agreement by reference as if fully set forth.

13. Rodgers appealed the 2008 Order to the North Carolina Court of Appeals.

14. On February 25, 2009, the North Carolina Court of Appeals dismissed Rodgers' appeal.

15. Rodgers still refused to comply with the 2008 Order.

16. On May 13, 2009, the Eichorns again moved to compel Rodgers to comply with the 2008 Order.

17.     On August 25, 2009, the state court again ordered Rodgers to comply with the settlement agreement ("the 2009 Order").  It also specifically incorporated the terms of the 2008 Order.

18.     On October 20, 2009, Rodgers filed a voluntary chapter 13 petition.

19.     On June 14, 2010, this court entered an order lifting the automatic stay and allowing foreclosure on the property.

20.     On July 29, 2010, Rodgers filed an adversary complaint alleging gross negligence, willful and wanton conduct, fraud, constructive fraud, and unfair and deceptive trade practices against PCR, Allen, Jim Allen Group, Inc., Thorpe, the Eichorns, W. Sidney Aldridge and Nicholls & Crampton, P.A., the attorney and law firm employed by the Eichorns in consummating the purchase of the property.

21.  The defendants responded and filed a motion to dismiss and motion for judgment on the pleadings, stating, among other arguments, that the settlement agreement should be enforced and bars Rodgers' complaint.

STANDARD OF REVIEW

A pleading which states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  FED. R. CIV. P. 8(a)(2); FED R. BANKR. P. 7008.  In determining whether the plaintiff has failed to state a claim upon which relief can be granted, the court must accept as true all pleaded allegations and view the complaint in the light most favorable to the plaintiff.  Hatfill v. New York Times Co., 416 F.3d 320, 329 (4th Cir. 2005).  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as adopted by the Federal Rules of Bankruptcy Procedure, a party may move to dismiss a complaint for failure to state a

claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); FED R. BANKR. P. 7012(b). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citations and quotations omitted). Heightening pleading requirements under the Federal Rules of Civil Procedure, the Supreme Court held that a statement showing entitlement to relief "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible when the facts alleged in the complaint allow the court to draw a "reasonable inference" that the defendant is liable for the alleged misconduct. Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.' " Id. at 1950 (citation omitted).

Pursuant to Rule 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c); FED R. BANKR. P. 7012(c). The standard of review for a motion for judgment on the pleadings is identical to that of a motion to dismiss for failure to state a claim under Rule 12(b)(6). McDow v. Sours (In re Sours), 350 B.R. 261, 265 (Bankr. E.D. Va. 2006). Judgment on the pleadings is appropriate when there is "'no issue as to material fact and only matters of law remain.'" Id. (citations omitted). Similar to reviewing the pleadings in a motion to dismiss, the court reviews the pleadings of a motion brought under Rule 12(c) by accepting all of the well-pleaded allegations in the complaint as true in the light most favorable to the non-movant. Id.

DISCUSSION

The doctrine of res judicata bars subsequent suits involving claims that have already been reduced to judgments. The doctrine represents "society's interest in the finality of judgments." Gullette v. Barrow (In re Barrow), 87 B.R. 879, 883 (Bankr. E.D. Va. 1988) (citing Itco Corp. v. Michelin Tire Corp., Commercial Div., 722 F.2d 42, 50 (4th Cir. 1983), cert. denied, 469 U.S. 1215 (1985)). State court judgments have a preclusive effect in subsequent federal lawsuits, and those judgments are given "full faith and credit in every court within the United States." 28 U.S.C. §1738. Federal courts are required to refer to the preclusion law of the state in which the judgment was rendered. Brooks v. Arthur, No. 09-1551, 2010 WL 4676977, at *4 (4th Cir. Nov. 19, 2010) (citing Exxon Mobil Corp. v. Saudi Basics Indus. Corp., 544 U.S. 280, 293 (2005)). The 2008 Order and 2009 Order, which incorporated the terms of the settlement agreement, were issued by a North Carolina court.

In North Carolina, the doctrine of res judicata applies when the following elements are satisfied: (1) a final judgment on the merits in an earlier lawsuit; (2) identity of the cause of action in the prior suit and the later suit; and (3) an identity of the parties or their privies in both suits. State ex rel. Tucker v. Frinzi, 344 N.C. 411, 413-14, 474 S.E.2d 127, 128 (N.C. 1996). A dismissal of an earlier claim with prejudice constitutes a final adjudication on the merits for the purposes of res judicata. Caswell Realty Assocs. I, L.P. v. Andrews Co., Inc., 128 N.C. App 716, 720, 496 S.E.2d 607, 611 (N.C. Ct. App. 1998). In addition, strict identity of the issues is not required and has been expanded to include those issues which could have been raised in the prior lawsuit. Id. at 720, 496 S.E.2d at 611 (citing Kabatnik v. Westminster Co., 63 N.C. App. 708, 712, 306 S.E.2d 513, 515 (N.C. Ct. App. 1983)).

The 2008 Order incorporated the terms of the parties' settlement agreement "as if fully set forth." Specifically, the settlement agreement stated "Upon completion of all above conditions parties will file stipulation of dismissal of all claims and counterclaims in the action with prejudice." Plaintiff Rodgers' appeal of this order was dismissed by the court of appeals. Despite this dismissal, plaintiff again refused to comply with the terms of the 2008 Order, prompting a second motion to compel compliance and the 2009 Order which, again, ordered enforcement and incorporated the terms of the 2008 Order and thus the terms of the settlement agreement. Twice, a state court ordered that the parties, among other conditions involving the sale of the property, voluntarily dismiss their claims with prejudice. As stated above, a voluntary dismissal of claims with prejudice constitutes a final judgment on the merits for purposes of res judicata. Caswell, 128 N.C. App at 720, 496 S.E.2d at 611. Additionally, the superior court orders enforcing the settlement are judgments to which this court must give deference.

Not only has a final judgment on the merits been rendered, but there is an identity of the causes of action in the prior state court lawsuit and the instant adversary proceeding. Plaintiff presently asserts gross negligence, willful and wanton conduct, fraud, constructive fraud, and unfair and deceptive trade practices against PCR, Allen, and Thorpe for their actions relating to the attempted sale of the property. Plaintiff asserted a crossclaim of negligence in the state court action against Allen and PCR for their actions relating to the attempted sale of the property. The negligence claim in the instant adversary proceeding is the same cause of action asserted in the prior state court action. Plaintiff argues the fraud claims in the instant action should be allowed because plaintiff learned of the fraud after the state court proceeding commenced. Allen, during discovery of the state court lawsuit, admitted in his deposition to whiting out Toth's name and

10

replacing it with plaintiff's as the true owner and seller of the property. The doctrine of res judicata does not apply where an issue and the facts that gave rise to it were not known to the court at the time of the prior judgment. Trs. of Garden of Prayer Baptist Church v. Geraldco Builders, Inc., 78 N.C. App. 108, 113, 336 S.E.2d 694, 697 (N.C. Ct. App. 1985). However, here, the plaintiff learned of the facts that gave rise to a claim of fraud during the state court action–when he had ample opportunity to amend his crossclaim.[1]

The final requirement for the doctrine of res judicata to apply in North Carolina is that the parties in the instant proceeding be identical or in privity to the parties in the state court action. Here, identity of the parties exist as to some but not all of the movants. PCR and Allen were parties to the state court action and this adversary proceeding. However, Jim Allen Group, Inc. and Thorpe were not parties to the original action; therefore the claims against them are not barred by res judicata. Thorpe is described as an agent of PCR and Allen in the state court complaint. This relationship does not create privity for purposes of res judicata. Former judgments in favor of a principal are not a bar to actions against an agent, who was not party to the prior action. Sumner v. Marion, 272 N.C. 92, 94, 157 S.E.2d 667, 669 (N.C. 1967). Thorpe and Jim Allen Group may have other defenses to the plaintiff's claims, but none were raised to the court.

The defendants argue in their motion to dismiss the adversary proceeding that the plaintiff's claims are also barred by the Rooker-Feldman doctrine. The doctrine "is confined to

---

[1] At the hearing, counsel for the plaintiff argued plaintiff did not know of the "whiting out" and replacement of names until discovery in February 2008. However, plaintiff's amended answer, counterclaims and crossclaims filed in the state court on August 31, 2007 state plaintiff discovered the whited-out terms and his forged signature in early December 2006. Regardless, the plaintiff still had an opportunity to raise a claim of fraud based on either timeline.

cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] review and rejection of those judgments." Exxon Mobil Corp. V. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005).  Plaintiff is not seeking relief from an injury sustained by the state court judgments, but rather reasserting claims that have already been adjudicated on their merits.  The court finds that the doctrine of res judicata provides the controlling principles here.

The defendants' motion to dismiss and motion for judgment on the pleadings are GRANTED as to Preferred Carolina Realty, Inc. and James E. Allen, Jr., and DENIED as to Jim Allen Group, Inc. and Harry James Thorpe.

**END OF DOCUMENT**