IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-450-FL

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROBERT V. RODGERS, | ) | |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| ROBERT V. RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| PREFERRED CAROLINAS REALTY, | ) | |
| INC.; JAMES E. ALLEN, JR.; JIM | ) | |
| ALLEN GROUP, INC.; HARRY | ) | |
| JAMES THORPE; RANDALL | ) | |
| EICHORN; LISA EICHORN; W. | ) | |
| SIDNEY ALDRIDGE; and NICHOLLS | ) | |
| & CRAMPTON, P.A.; | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on appeal by Robert Rodgers, debtor, from an order of the United States Bankruptcy Court dated July 7, 2011. Notice of appeal was filed August 24, 2011, pursuant to 28 U.S.C. § 158(a), within the time period allotted by Fed. R. Bankr. P. 8002. The issues raised are ripe for adjudication. For the reasons that follow, the decision below is vacated and remanded.

## STATEMENT OF THE CASE

Debtor Rodgers ("Rodgers") petitioned for relief under Chapter 13 of the Bankruptcy Code on October 20, 2009. On July 29, 2010, Rodgers instituted an adversary proceeding by filing complaint against Preferred Carolinas Realty, Inc. ("PCR"), James E. Allen, Jr. ("Allen"), Jim Allen Group, Inc. ("Jim Allen Group"), Harry James Thorpe ("Thorpe"), Randall and Lisa Eichorn ("the Eichorns"), W. Sidney Aldridge ("Aldridge"), and Nicholls & Crampton, P.A. ("Nicholls & Crampton"). Therein, Rodgers asserted various claims for relief arising out of a real estate dispute. In 2010, PCR, Allen, Jim Allen Group, and Thorpe filed a motion to dismiss and motion for judgment on the pleadings. On December 3, 2010, the bankruptcy court granted the motion as to PCR and Allen, but denied the motion as to Jim Allen Group and Thorpe.[1] Plaintiff appealed. On July 12, 2011, this court vacated and remanded the bankruptcy court's decision with regard to defendants PCR and Allen because the state court action relied on for purposes of res judicata was not a final judgment on the merits. See Rodgers v. Preferred Carolina Realty, Inc., et al (In re: Rodgers), No. 05:11-CV-153-FL, slip. op at 2 (E.D.N.C. July 12, 2011) ("Rodgers Order I").

Meanwhile, on July 7, 2011, the bankruptcy court granted the motion for judgment on the pleadings of defendants Aldridge and Nicholls & Crampton, P.A. ("Aldridge defendants") as to plaintiff's claims of abuse of process, persistence in nonjusticiable claims, infliction of emotional distress and fraudulent practices by attorneys. On August 24, 2011, Rodgers timely filed notice of appeal of the bankruptcy court's order, seeking reversal of the bankruptcy court's dismissal of the claims against the Aldridge defendants. The record on appeal was docketed in this court on August

---

[1] See Rodgers v. Preferred Carolina Realty, Inc., et al (In re: Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2010 WL 5014340 (Bankr. E.D.N.C. Dec. 3, 2010).

24, 2011. The parties thereafter filed their briefs for the court's consideration.

## STATEMENT OF FACTS

The court set forth a detailed recitation of the relevant facts in Rodgers Order I in July 2011. No party objected to the same. For benefit of the record, the court reiterates the facts as set forth in that order and supplements where necessary.

In December 2005, the Eichorns were seeking to purchase a home and entered into an agency relationship with PCR and Allen to represent them in the process. Thorpe and Allen, agents for PCR, showed the Eichorns property located in Wake Forest, North Carolina ("the property"). PCR told the Eichorns that the property was owned by Toth Building Company, which was performing construction on the property. In fact, Rodgers was the actual owner of the property, not Toth Building Company as represented to the Eichorns by PCR. Rodgers had hired Brandon Toth ("Toth") to oversee the construction on the property.

Through PCR, the Eichorns entered into negotiations with Toth and Toth Building Company for the purchase of the property and the home to be constructed on the property. On December 8, 2005, PCR presented to the Eichorns a written contract that contemplated a purchase price of $502,500.00 and a closing date of April 14, 2006. The parties signed the contract, although Rodgers, the true owner of the property, had no knowledge of it. Unbeknownst to the Eichorns, PCR modified the contract by "whiting out" the name of the seller, Toth Building Company, and substituting Rodgers' name.

In late December, 2005, Toth informed Rodgers that there was an offer to purchase the property for $502,500.00. For the next several months, the parties negotiated additional construction on the property. In October 2006, the Eichorns learned that Rodgers was the actual owner of the

property. In November 2006, Toth, Allen, and the Eichorns through their retained counsel Aldridge of Nicholls & Crampton, met to finalize and execute an offer to purchase and contract for review by Rodgers. In January 2007, Rodgers rejected the Eichorns' new offer to purchase the property.

On March 12, 2007, Aldridge, on behalf of the Eichorns, filed a Notice of Lis Pendens against the property, and on April 2, 2007, the Eichorns filed a complaint against Rodgers, PCR, Allen, Toth, and Toth Building Company in Wake County Superior Court.[2] A flurry of cross claims and counterclaims ensued, including, *inter alia*, a cross claim by Rodgers against PCR and Allen for negligence, which claim also arose out of the real estate dispute. On May 1, 2008, the parties entered into a settlement agreement that allowed the Eichorns to purchase the property from Rodgers for $425,000.00 and required Rodgers' co-defendants to pay Rodgers $50,000.00. Finally, the settlement agreement provided that "upon completion of all above conditions, parties will file stipulation of dismissal of all claims and counterclaims in the action with prejudice, to be filed by plaintiffs' attorney," and further provided that "mutual release [is] to be executed by all parties." Rodgers contends that he signed the settlement agreement while under gross duress and undue influence.

In May 2008, Rodgers informed the other parties that he would not honor the settlement agreement. The Eichorns, PCR, and Allen filed motions to compel compliance with and to enforce the settlement agreement. On July 3, 2008, the state court ordered Rodgers to comply with the settlement agreement, incorporating the settlement agreement by reference. Rodgers appealed to the North Carolina Court of Appeals, which dismissed Rodgers' appeal. Rodgers still refused to comply, prompting a second motion to compel compliance. On August 25, 2009, the state court

---

[2] See Eichorn v. Rodgers, et al, Wake Co. Superior Court file number 07-CVS-3902.

4

concluded that Rodgers had "willfully and without justification" refused to comply with the settlement agreement and again ordered Rodgers' compliance.

On October 20, 2009, Rodgers filed a voluntary Chapter 13 petition. On July 29, 2010, Rodgers initiated the adversary proceeding against PCR, Allen, Jim Allen Group, Thorpe, the Eichorns, Aldridge, and Nicholls & Crampton, asserting claims of gross negligence, fraud, constructive fraud, unfair and deceptive trade practices, and willful and wanton conduct, which claims arose out of the same transactions at issue in the state court proceedings and settlement agreement. Shortly thereafter, PCR, Allen, Jim Allen Group, and Thorpe filed motion for judgment on the pleadings, arguing, *inter alia*, that the settlement agreement was enforceable and barred Rodgers' complaint. The bankruptcy court granted the motion as to PCR and Allen, finding that Rodgers' claims against them were barred by principles of res judicata, but denied the motion as to Jim Allen Group and Thorpe because they were not parties to the original state court action. Rodgers appealed the dismissal of PCR and Allen, and this court vacated and remanded.

On December 6, 2010, the Aldridge defendants filed a motion for judgment on the pleadings as to all claims against them. On July 6, 2011, the bankruptcy court granted judgment on the pleadings for the Aldridge defendants, from which this appeal arises.

## DISCUSSION

A.    Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to review the bankruptcy court's order. "On appeal [from the bankruptcy court] the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. On appeal, findings of fact are reviewed for clear

error, and questions of law are reviewed *de novo*. Bowers v. Atlanta Motor Speedway (In re Southeast Hotel Properties Ltd. Partnership), 99 F.3d 151, 154 (4th Cir. 1996); see also Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). Lastly, this court has an independent obligation to confirm that subject matter jurisdiction is present throughout the litigation. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

B.   Analysis

The Bankruptcy Amendments and Federal Judgeship Act of 1984, ("BAFJA") provides that district courts have original and exclusive jurisdiction of all cases under Title 11 and "original but not exclusive jurisdiction of all civil proceedings arising under title II, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a), (b); In re Southeastern Materials, Inc., 2012 WL 1034322 at *5 (Bankr. M.D.N.C. 2012). The district courts have discretion to refer "any or all cases under title 11" to the bankruptcy judges for that district. 28 U.S.C. § 157(a). Reference by the district court may permit the bankruptcy judge both to hear and determine issues, ultimately "enter[ing] appropriate orders and judgments," or it may allow that judge only to propose findings of fact and conclusions of law, which the district court then reviews *de novo*. §§ 157(b)(1), (c)(1). In re El-Atari, 2011 WL 5828013 at *1-2 (E.D.Va. 2011). The bankruptcy court's authority to enter a final order depends on whether the issue at hand is deemed a "core proceeding." § 157(b). Id.

Under the BAFJA, a bankruptcy judge's authority to enter a final order hinges on whether the bankruptcy proceeding is "core" or "non-core." Valley Historic Ltd. P'ship v. Bank of N.Y., 486 F.3d 831, 839 n.3 (4th Cir. 2007). However, the core/non-core dichotomy does not determine the

bankruptcy judge's jurisdiction. Under 28 § 157(b)(1), "bankruptcy courts may hear and enter final judgments in 'core proceedings' in a bankruptcy case" while § 157(c)(1) provides that in "non-core proceedings, the bankruptcy courts instead submit proposed findings of fact and conclusions of law to the district court, for that court's review and issuance of final judgment." Stern v. Marshall, 564 U.S. __, 131 S. Ct. 2594, 2601-02 (2011); Id.

A non-core proceeding has four characteristics: (1) it is not specifically listed as a core proceeding in 28 U.S.C. § 157(b)(2)(B)-(N); (2) it existed prior to the bankruptcy case; (3) it would continue to exist independent of the provisions of Title 11; and (4) the parties' rights, obligations, or both are not significantly affected by the filing of the bankruptcy. In re Freeway Foods of Greensboro, Inc., 449 B.R. 860, 873-74 (Bankr. M.D.N.C. 2011) (citations omitted). See Official Comm. of Unsecured Creditors of Wickes, Inc. v. Wilson, No. 06 C 0869, 2006 WL 1457786, at *2 (N.D.Ill. May 23, 2006) (proceeding is non-core if it does not involve a substantive right created by bankruptcy law and is one that could exist outside of bankruptcy); Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship, 2004 WL 1048239, at *2 (proceeding is non-core if it exists independently under state law and is merely "related to" the bankruptcy case). The generally accepted definition of "related to" are those proceedings whose outcome could have any conceivable effect on the bankruptcy estate. See Morrison v. Western Builders of Amarillo, Inc. (In re Morrison), 555 F.3d 473, 479 (5th Cir.2009).

Days before the bankruptcy court entered its order granting the Aldridge defendants' motion for judgment on the pleadings, the Supreme Court decided Stern v. Marshall, 564 U.S. __, 131 S. Ct. 2594 (2011). In Stern, the Supreme Court determined that § 157(b)(2)(C) authorized bankruptcy courts to enter final judgments on counterclaims that were asserted against proofs of claims filed by

creditors. Stern, 131 S.Ct. at 2608. The court found, however, that the counterclaim in question - a state law claim for tortious interference with an expected gift - existed without regard to any bankruptcy proceeding, and a final judgment could not be entered by a non-Article III court. Id. at 2618. Therefore, the court found that 28 U.S.C. § 157 was unconstitutional in its application to the counterclaim in question.

While the scenario in Stern is different from the instant case, the guiding principles of that opinion are relevant here where plaintiff has initiated adversary proceedings in the bankruptcy court that involve only issues of common law or state law. As other courts have noted, Stern emphasized a point the Supreme Court earlier made in Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 70 n.25 (1982), that as Article I courts, bankruptcy courts may not enter final judgments in non-bankruptcy matters that are based on the common law or state law. In re Southeastern materials, at *6 (citing Stern, 131 S.Ct. at 2609). Finding that bankruptcy courts, as non-Article III tribunals, lacked the constitutional authority to finally adjudicate state-created private rights, Stern articulated a two-prong test that essentially asks whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. 131 S.Ct. at 2618. If either prong of the test is met, the bankruptcy court has constitutional authority to enter final order. "Conversely, if the action neither stems from the bankruptcy itself nor would necessarily be resolved in the claims allowance process, the bankruptcy court lacks constitutional authority to enter final judgment and may only submit proposed findings of fact and conclusion of law to the district court." In re Southeastern Materials, Inc., 2012 WL 1034322 at *5.

Upon review of the instant case and the briefs on appeal, it appears that the claims at issue - abuse of process, persistence in nonjusticiable claims, infliction of emotional distress, and fraudulent

practices by attorneys - do not stem from the bankruptcy itself, nor would they necessarily be resolved in the claims allowance process. Instead, the instant claims involve possible tort liability of the Aldridge defendants arising out of state law based on a real estate dispute.

The bankruptcy court's order does not indicate whether the claims at issue are core or non-core; nor does the bankruptcy court's order set forth the basis for the court's jurisdiction and authority to enter final judgment on the claims.[3] See In re Freeway Foods, 449 B.R. at 869, 873 (including a section setting forth the court's jurisdiction and authority to enter final judgment). Review of the briefs reveals that none of the parties have raised this issue. Defendants in their answer assert as their ninth defense the fact that plaintiff's complaint does not assert whether the claims raised are core or non-core, see Defendants' Answer at 12 (DE # 2-3), and preserve their right to raise any jurisdictional question, which, as noted, they have not done. In light of Stern's reiteration of the importance of these questions in bankruptcy litigation involving common or state law claims, the court finds that remand is necessary for a determination of the nature of the instant claims and, it follows, the bankruptcy court's authority to either enter final judgment on those claims or submit proposed findings of fact and recommendation under 28 U.S.C. § 157(c). The court notes also that § 157(c) provides that if all parties consent to the referral and entry of a final order in a non-core matter, a bankruptcy court may enter a final order under § 157(c)(2). However, since this issue has not been addressed by the parties, it is not clear whether the parties would so consent in

---

[3] The court notes that the bankruptcy court's order in Rodgers Order I addressing the claims against defendants PCR and Allen included a jurisdictional section. This section noted the subject matter of the "core proceeding" as being pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. Order at 2. While the bankruptcy court's jurisdiction and authority to enter final judgment could be the same here, where the Rodgers Order I was entered prior to the Supreme Court's ruling in Stern and where the bankruptcy court here did not offer the specific basis for its authority to enter final judgment or a determination of the claims as core or non-core, remand is necessary to consider these specific issues. Furthermore, it is not readily apparent from the briefs that a specific subsection of § 157(b)(2) is applicable to the instant case.

this case upon a determination that the instant claims are non-core.[4]

## CONCLUSION

Because neither the parties nor the bankruptcy court have demonstrated that the bankruptcy court's final decision on the merits on what appear to be non-core claims was consistent with federal law in the wake of Stern v. Marshall, 564 U.S. __, 131 S. Ct. 2594 (2011) or under 28 U.S.C. § 157, the decision below is VACATED and REMANDED for the bankruptcy court to fully consider the issues discussed herein.[5]

SO ORDERED, this the 22nd day of April, 2012.

/s/
LOUISE W. FLANAGAN
United States District Judge

---

[4] The court notes also the possibility of a district court treating a final order of a bankruptcy court regarding a non-core proceeding as proposed and engaging in an independent review of the record itself. See Stern, 131 S.Ct. at 2602. The court finds that proceeding in this manner in this instance would be inappropriate as it is not readily apparent from the record currently before it that the district court has independent subject matter jurisdiction over this matter where there is no federal question raised and there appears to be no diversity between the parties in the adversary proceeding. If, on remand it is determined that plaintiff's claims should be resolved in an Article III tribunal, the parties must fully set forth the basis for the court's subject matter jurisdiction.

[5] This court's holding is expressly limited to the issues of whether the instant claims are core or non-core, and based on that determination, whether or not the bankruptcy court has the constitutional authority to enter final judgment on plaintiff's claims. Accordingly, the court has not addressed or considered the merits of plaintiff's state law claims or whether judgment on the pleadings is appropriate for defendants with regard to the same. The matter is remanded to permit opportunity for consideration of the issues raised herein. Whether the bankruptcy court on remand will consider the merits of plaintiffs' claims against the Aldridge defendants thus remains to be seen.