IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-161-FL
No. 5:12-MC-60-FL

| | |
|---|---|
| In re:                                                        )<br>                                                                  )<br>ROBERT V. RODGERS,                              )<br>                                                                  )<br>         Debtor,                                          )<br>                                                                  )<br>_____   )<br>                                                                  )<br>ROBERT V. RODGERS,                              )<br>                                                                  )<br>         Plaintiff,                                         )<br>     v.                                                         )<br>                                                                  )<br>PREFERRED CAROLINAS REALTY,       )<br>INC.; JAMES E. ALLEN, JR.; JIM              )<br>ALLEN GROUP, INC.; HARRY                )<br>JAMES THORPE; RANDALL                    )<br>EICHORN; LISA EICHORN; W.                )<br>SIDNEY ALDRIDGE; and NICHOLLS   )<br>& CRAMPTON, P.A.;                              )<br>                                                                  )<br>         Defendants.                                   ) | ORDER |

This matter comes before the court on appeal by Robert Rodgers, debtor, from an order of the United States Bankruptcy Court dated August 1, 2012. Notice of appeal was filed October 10, 2012, pursuant to 28 U.S.C. § 158(a), within the time period allotted by Fed. R. Bankr. P. 8002. The issues raised are ripe for adjudication. For the reasons that follow, the decision below is affirmed.

## STATEMENT OF THE CASE

Debtor Rodgers ("Rodgers") petitioned for relief under Chapter 13 of the Bankruptcy Code on October 20, 2009. On July 29, 2010, Rodgers instituted an adversary proceeding by filing complaint against Preferred Carolinas Realty, Inc. ("PCR"), James E. Allen, Jr. ("Allen"), Jim Allen Group, Inc. ("Jim Allen Group"), Harry James Thorpe ("Thorpe"), Randall and Lisa Eichorn ("the Eichorns"), W. Sidney Aldridge ("Aldridge"), and Nicholls & Crampton, P.A. ("Nicholls & Crampton"). Therein, Rodgers asserted various claims for relief arising out of a real estate dispute.[1]

On July 7, 2011, the bankruptcy court granted the motion for judgment on the pleadings of defendants Aldridge and Nicholls & Crampton, P.A. ("Aldridge defendants") as to plaintiff's claims of abuse of process, persistence in nonjusticiable claims, infliction of emotional distress and fraudulent practices by attorneys. Rodgers v. Preferred Carolina Realty, Inc., et al (In re: Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2011 WL 5909216 (Bankr. E.D.N.C. July 7, 2011). On August 24, 2011, Rodgers timely filed notice of appeal of the bankruptcy court's order, seeking reversal of the bankruptcy court's dismissal of the claims against Aldridge defendants. This court reversed and remanded the case by order on April 23, 2012, relying on the recent Supreme Court case Stern v. Marshall, 564 U.S. __, 131 S. Ct. 2594 (2011), and advised the bankruptcy court

---

[1] In 2010, PCR, Allen, Jim Allen Group, and Thorpe filed a motion to dismiss and motion for judgment on the pleadings. On December 3, 2010, the bankruptcy court granted the motion as to PCR and Allen, but denied the motion as to Jim Allen Group and Thorpe. See Rodgers v. Preferred Carolina Realty, Inc., et al (In re: Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2010 WL 5014340 (Bankr. E.D.N.C. Dec. 3, 2010). Plaintiff appealed. On July 12, 2011, this court vacated and remanded the bankruptcy court's decision with regard to defendants PCR and Allen because the state court action relied on for purposes of *res judicata* was not a final judgment on the merits. See Rodgers v. Preferred Carolina Realty, Inc., et al (In re: Rodgers), No. 05:11-CV-153-FL, slip. op at 2 (E.D.N.C. July 12, 2011) ("Rodgers Order I"). As to defendants the Eichorns, the bankruptcy court entered default entered against them on October 13, 2010, for failure to respond to summons. The Eichorns moved to set aside, and that motion was granted by bankruptcy order on March 1, 2011. Rodgers v. Preferred Carolina Realty, Inc., et al (In re: Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2011 WL 799784 (Bankr. E.D.N.C. Mar. 1, 2011).

2

to inform as to the type of proceedings (i.e. whether they are "core" or "non-core")[2] and source of its jurisdiction for the July 7, 2011, order. See Rodgers v. Preferred Carolina Realty, Inc., *et al* (In re: Rodgers), No. 05:11-CV-450-FL (E.D.N.C. April 23, 2012) ("Rodgers Order II"). This court's April 2012 order did not reach the merits of plaintiff's claims against Aldridge defendants. Id. at 10, fn.5.

On August 1, 2012, the bankruptcy court entered a third order finding that the claims are "non-core" pursuant to 28 U.S.C. § 157. Furthermore, the bankruptcy court found that it had jurisdiction, despite lack of consent from all parties, to decide plaintiff's claims under section 157(c)(1), and re-submitted its conclusions of law from the July 7, 2011, bankruptcy order.[3] Plaintiff objected to the August 1, 2012, bankruptcy order, raising again his previous arguments on the merits of the July 7, 2011, bankruptcy order. However, as plaintiff also points out, some confusion has arisen among the parties as to the precise extent to which the August 1, 2012, bankruptcy order vacated its previous order where there was reliance on *res judicata*, which could conflict with this court's July 12, 2011, order (vacating the bankruptcy court's December 3, 2010, order).

## STATEMENT OF FACTS

This court set forth a detailed recitation of the relevant facts in Rodgers Order I in July 2011, and Rodgers Order II in April 2012. No party objected to the same. For benefit of the record, the court reiterates and supplements those facts where necessary.

---

[2] These terms are defined infra Discussion Section B.1.

[3] The bankruptcy court also notes that it "vacates the order with respect to its alternative reliance on *res judicata* grounds, given the district court's earlier ruling on that issue." Rodgers v. Preferred Carolina Realty, Inc., *et al* (In re: Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2012 WL 3133797 (Bankr. E.D.N.C. Aug. 1, 2012).

3

In December 2005, the Eichorns were seeking to purchase a home and entered into an agency relationship with PCR and Allen to represent them in the process. Thorpe and Allen, agents for PCR, showed the Eichorns property located in Wake Forest, North Carolina ("the property"). PCR told the Eichorns that the property was owned by Toth Building Company, which was performing construction on the property. In fact, Rodgers, not Toth Building Company, was the actual owner of the property. Rodgers had hired Brandon Toth ("Toth") to oversee the construction on the property.

Through PCR, the Eichorns entered into negotiations with Toth and Toth Building Company for the purchase of the property and the home to be constructed on the property. On December 8, 2005, PCR presented to the Eichorns a written contract contemplating a purchase price of $502,500.00 and a closing date of April 14, 2006. The parties signed the contract, although Rodgers, the true owner of the property, had no knowledge of it. Unbeknownst to the Eichorns, PCR modified the contract by "whiting out" the name of the seller, Toth Building Company, and substituting Rodgers' name.

In late December, 2005, Toth informed Rodgers that there was an offer to purchase the property for $502,500.00. For the next several months, the parties negotiated additional construction on the property. In October 2006, the Eichorns learned that Rodgers was the actual owner of the property. In November 2006, Toth, Allen, and the Eichorns through their retained counsel Aldridge of Nicholls & Crampton, met to finalize and execute an offer to purchase and contract for review by Rodgers. In January 2007, Rodgers rejected the Eichorns' new offer to purchase the property.

On March 12, 2007, Aldridge, on behalf of the Eichorns, filed a Notice of Lis Pendens against the property, and on April 2, 2007, the Eichorns filed a complaint against Rodgers, PCR,

Allen, Toth, and Toth Building Company in Wake County Superior Court.[4] A flurry of cross claims and counterclaims ensued, including, *inter alia*, a cross claim by Rodgers against PCR and Allen for negligence, which claim also arose out of the real estate dispute. On May 1, 2008, the parties entered into a settlement agreement that allowed the Eichorns to purchase the property from Rodgers for $425,000.00 and required Rodgers' co-defendants to pay Rodgers $50,000.00. Finally, the settlement agreement provided that "upon completion of all above conditions, parties will file stipulation of dismissal of all claims and counterclaims in the action with prejudice, to be filed by plaintiffs' attorney," and further provided that "mutual release [is] to be executed by all parties." Rodgers contends that he signed the settlement agreement while under gross duress and undue influence.

In May 2008, Rodgers informed the other parties that he would not honor the settlement agreement. The Eichorns, PCR, and Allen filed motions to compel compliance with and to enforce the settlement agreement. On July 3, 2008, the state court ordered Rodgers to comply with the settlement agreement, incorporating the settlement agreement by reference. Rodgers appealed to the North Carolina Court of Appeals, which dismissed Rodgers' appeal. Rodgers still refused to comply, prompting a second motion to compel compliance. On August 25, 2009, the state court concluded that Rodgers had "willfully and without justification" refused to comply with the settlement agreement and again ordered Rodgers' compliance.

On October 20, 2009, Rodgers filed a voluntary Chapter 13 petition. On July 29, 2010, Rodgers initiated the adversary proceeding against PCR, Allen, Jim Allen Group, Thorpe, the Eichorns, Aldridge, and Nicholls & Crampton, asserting claims of gross negligence, fraud,

---

[4] See Eichorn v. Rodgers, et al, Wake Co. Superior Court file number 07-CVS-3902.

5

constructive fraud, unfair and deceptive trade practices, and willful and wanton conduct, which claims arose out of the same transactions at issue in the state court proceedings and settlement agreement. Shortly thereafter, PCR, Allen, Jim Allen Group, and Thorpe filed motion for judgment on the pleadings, arguing, *inter alia*, that the settlement agreement was enforceable and barred Rodgers' complaint. The bankruptcy court granted the motion as to PCR and Allen, finding that Rodgers' claims against them were barred by principles of *res judicata*, but denied the motion as to Jim Allen Group and Thorpe because they were not parties to the original state court action. Rodgers appealed the dismissal of PCR and Allen, and this court vacated and remanded.

On December 6, 2010, Aldridge defendants filed a motion for judgment on the pleadings as to all claims against them. On July 7, 2011, the bankruptcy court granted judgment on the pleadings for Aldridge defendants, which was timely appealed. On April 23, 2012, this court reversed due to jurisdiction concerns, and did not reach the dispute on the merits. The bankruptcy court held a conference with the parties and entered an order on August 1, 2012, from which plaintiff appealed. This matter is now properly before the court. For the reasons that follow the bankruptcy court's proposed conclusions of law are affirmed and adopted.

## DISCUSSION

A.  Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to review the bankruptcy court's order. "On appeal [from the bankruptcy court] the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. On appeal, findings of fact are reviewed for clear error, and questions of law are reviewed *de novo*. Bowers v. Atlanta Motor Speedway (In re

Southeast Hotel Properties Ltd. Partnership), 99 F.3d 151, 154 (4th Cir. 1996); see also Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). Lastly, this court has an independent obligation to confirm that subject matter jurisdiction is present throughout the litigation. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

The bankruptcy court granted judgment on the pleadings for Aldridge defendants under Federal Rule of Civil Procedure 12(c), made applicable to proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7012(b). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004). In considering the motion, the court assumes the facts alleged in the complaint are true, and draws all reasonable factual inferences in the nonmovant's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). The court may rely on facts admitted in the pleadings as well as documents attached to the pleadings. See Farmer v. Wilson Housing Authority, 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").

B.   Analysis

   1.   Jurisdiction

The Bankruptcy Amendments and Federal Judgeship Act of 1984, ("BAFJA") provides that district courts have original and exclusive jurisdiction of all cases under Title 11 and "original but not exclusive jurisdiction of all civil proceedings arising under title II, or arising in or related to cases

7

under title 11." 28 U.S.C. §§ 1334(a), (b); In re Southeastern Materials, Inc., 2012 WL 1034322 at *5 (Bankr. M.D.N.C. 2012). The district courts have discretion to refer "any or all cases under title 11" to the bankruptcy judges for that district. 28 U.S.C. § 157(a). Reference by the district court may permit the bankruptcy judge both to hear and determine issues, ultimately "enter[ing] appropriate orders and judgments," or it may allow that judge only to propose findings of fact and conclusions of law, which the district court then reviews *de novo*. §§ 157(b)(1), (c)(1). In re El-Atari, 2011 WL 5828013 at *1-2 (E.D.Va. 2011). The bankruptcy court's authority to enter a final order depends on whether the issue at hand is deemed a "core proceeding." § 157(b). Id.

Under the BAFJA, a bankruptcy judge's authority to enter a final order hinges on whether the bankruptcy proceeding is "core" or "non-core." Valley Historic Ltd. P'ship v. Bank of N.Y., 486 F.3d 831, 839 n.3 (4th Cir. 2007). However, the core/non-core dichotomy does not determine the bankruptcy judge's jurisdiction. Under 28 § 157(b)(1), "bankruptcy courts may hear and enter final judgments in 'core proceedings' in a bankruptcy case" while § 157(c)(1) provides that in "non-core proceedings, the bankruptcy courts instead submit proposed findings of fact and conclusions of law to the district court, for that court's review and issuance of final judgment." Stern v. Marshall, 564 U.S. __, 131 S. Ct. 2594, 2601-02 (2011).

A non-core proceeding has four characteristics: (1) it is not specifically listed as a core proceeding in 28 U.S.C. § 157(b)(2)(B)-(N); (2) it existed prior to the bankruptcy case; (3) it would continue to exist independent of the provisions of Title 11; and (4) the parties' rights, obligations, or both are not significantly affected by the filing of the bankruptcy. In re Freeway Foods of Greensboro, Inc., 449 B.R. 860, 873-74 (Bankr. M.D.N.C. 2011) (citations omitted). See Official Comm. of Unsecured Creditors of Wickes, Inc. v. Wilson, No. 06 C 0869, 2006 WL 1457786, at *2

(N.D.Ill. May 23, 2006) (proceeding is non-core if it does not involve a substantive right created by bankruptcy law and is one that could exist outside of bankruptcy); Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship, 2004 WL 1048239, at *2 (proceeding is non-core if it exists independently under state law and is merely "related to" the bankruptcy case). The generally accepted definition of "related to" are those proceedings whose outcome could have any conceivable effect on the bankruptcy estate. See Morrison v. Western Builders of Amarillo, Inc. (In re Morrison), 555 F.3d 473, 479 (5th Cir.2009).

In this case, the bankruptcy court has submitted only proposed conclusions of law, which this court reviews *de novo*. It found that the proceedings are non-core but within its jurisdiction pursuant to 28 U.S.C. § 157. The claims at issue - abuse of process, persistence in nonjusticiable claims, infliction of emotional distress, and fraudulent practices by attorneys - do not stem from the bankruptcy itself, nor would they necessarily be resolved in the claims allowance process. Instead, the instant claims involve possible tort liability of Aldridge defendants arising out of state law based on a real estate dispute. Therefore, pursuant to 28 U.S.C. § 157 and in compliance with Stern, the bankruptcy court's jurisdiction is proper. The court will now turn to the underlying claims at issue.[5]

2.   Abuse of Process

Abuse of process is "the misuse of legal process for an ulterior purpose." Vodrey v. Golden, 864 F.2d 28, 30 (4th Cir. 1988) (internal citations omitted). In North Carolina, this tort is divided into two elements: (1) an ulterior motive, "where the prior action was initiated to achieve a collateral purpose not within the normal scope of the process used;" and (2) an act, "where the defendant

---

[5] Note that the analysis of the bankruptcy court is incorporated from its order on July 7, 2011, as such discussion was adopted in part in the bankruptcy court's August 1, 2012, order. Therefore citations to the bankruptcy order, and to plaintiff's brief, are in relation to the earlier filing, where plaintiff's claims on their merits are discussed.

9

committed some wilful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter." Id.

Plaintiff claims that Aldridge defendants filed a Notice of Lis Pendens after explicitly acknowledging that no contract existed for the sale of Lot 19 to Aldridge's clients, the Eichorns. This caused plaintiff to default on his mortgage and lose the property to foreclosure and bankruptcy because Lis Pendens prevented refinance or sale of that property. Pl.'s Br. 9-10. The bankruptcy court found that the pleadings were insufficient to show any "collateral matter" in which Aldridge sought to seek an advantage, where what they sought throughout was to purchase and obtain title to the property. Rodgers, 2011 WL 5909216, at *4. Plaintiff relies heavily upon the similar case of Austin v. Wilder, 26 N.C. App. 229, 215 S.E.2d 794 (1975), which found the knowingly invalid filing of Lis Pendens on an apartment project in order to prevent an unrelated construction loan qualified as abuse of process. Austin explained its reasoning as follows:

> [O]rdinarily the filing of a civil suit to establish a claim, whether the claim be ultimately determined to be well founded or not, will not in itself be sufficient to show any wrongful duress imposed upon the defendant in such suit. However, when the plaintiff goes further and wrongfully perverts or abuses the processes of the court to coerce something for which the process was not intended, the court is warranted in granting relief to the victim of such coercion, either by recognizing an action for the tort of abuse of process, or by recognizing duress such as to justify avoidance of the transactions coerced by such misuse of process.

Id. at 233 (internal citations omitted).

In Austin, the "collateral matter," to filing Notice of Lis Pendens on the apartment property for which a construction company had a time-limited option, was blocking a construction loan solely to extort signed notes and the transfer of $10,000. See id. While Austin is similar to the case at issue here, it is distinguishable where plaintiff has failed to plead the act of filing Notice of Lis

10

Pendens was for the purpose of gaining an advantage in some collateral matter. Plaintiff does not plead or show how Aldridge acted in any collateral matter, but claims that the Lis Pendens prevented plaintiff from selling that property to another buyer. Compl. ¶23. Lis Pendens is designed to give notice to potential property buyers that real estate property is subject to litigation. Furthermore, the property subject to the notice was that same real property that the Eichorns sought to purchase through Aldridge. Compl. ¶¶ 17-24. Therefore, upon review of the record, the bankruptcy court's opinion, and the objections raised by plaintiff, this court adopts and upholds the bankruptcy judge's conclusions of law with respect to the abuse of process claim.

### 3. Infliction of Emotional Distress

In North Carolina, a cause of action may be brought for either intentional infliction of emotional distress or negligent infliction of emotional distress. Intentional infliction of mental distress consists of: (1) extreme and outrageous conduct; (2) that is intended to cause severe emotional distress to another; and (3) that does in fact cause severe emotional distress to another. Holloway v. Wachovia Bank & Trust Co., 339 N.C. 338, 351, 452 S.E.2d 233, 241 (1994). Negligent infliction of emotional distress requires the plaintiff to allege that: (1) defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause plaintiff severe emotional distress; and (3) that conduct did in fact cause plaintiff severe emotional distress. McAllister v. Ha, 347 N.C. 638, 645, 496 S.E.2d 577, 582-83 (1998). "Severe emotional distress" is defined by the same standards in both causes of action, and means any emotional or mental disorder, including neurosis, psychosis, chronic depression or phobia, that may be generally recognized and diagnosed by trained professionals. Holloway, 339 N.C. at 354-55, 452 S.E.2d at 243.

11

As the bankruptcy court recognized in its July 2011 order, plaintiff does not allege any particular emotional or mental disorder in his complaint. In plaintiff's brief on appeal, he asserts that he suffered "severe stress," "gross duress and undue influence," and "severe emotional distress" because of the financial instability that resulted from the Notice of Lis Pendens. Pl.'s Br. 23-24. The brief, as with the complaint, fails to list any particular emotional or mental disorder that is generally recognized and diagnosed by trained professionals. These conclusory statements of law combined with allegations of outrageous conduct on the part of defendants, do not sufficiently show that plaintiff suffered "severe emotional distress" as defined under North Carolina law. See Holloway, 339 N.C. at 356-57, 452 S.E.2d at 243-44 (finding that severe emotional distress was not shown by plaintiffs who argued that severe and outrageous conduct of defendant was sufficient to infer distress). Therefore, this court adopts the findings of the bankruptcy court that the complaint failed to state a claim for either intentional or negligent infliction of emotional distress.

4. Fraudulent Practices by Attorneys

North Carolina General Statute § 84-13 provides a cause of action against an attorney who "commits any fraudulent practice." Fraud may be actual or constructive. Watts v. Cumberland County Hosp. System, Inc., 317 N.C. 110, 115, 343 S.E.2d 879, 883 (1986). The elements of actual fraud are: (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) that does in fact deceive; and (5) results in injury. Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007). The elements of constructive fraud are that plaintiff must allege facts and circumstances: "(1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which

12

defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." Watts, 317 N.C. at 116, 343 S.E.2d at 884.

As to plaintiff's actual fraud claim, the false representation that plaintiff alleges against Aldridge defendants is that Aldridge claimed the Eichorns had a valid contract to purchase the property, knowing that there was no valid contract. Comp. ¶¶ 40-41. The problem with this false representation is that it did not deceive plaintiff, who claims that both himself and Aldridge knew at the time of filing of the Notice of Lis Pendens that there was no valid contract. See Anderson, 508 F.3d at 189. Without a reasonable reliance on Aldridge's statement by plaintiff, his claim for actual fraud must fail because plaintiff was not "deceived." See Anderson, 508 F.3d at 189.

Plaintiff argues on appeal to this court that he does not have to prove the elements of actual fraud in order for his claim of fraudulent practices by attorneys to survive. Pl.'s Br. 19-22. Therefore, this court will also examine his complaint for allegations of constructive fraud. The first element of constructive fraud requires a relationship between plaintiff and defendant of "trust and confidence." Watts, 317 N.C. at 116, 343 S.E.2d at 884. An attorney-client relationship qualifies. North Carolina State Bar v. Gilbert, 189 N.C. App. 320, 325, 663 S.E.2d 1, 5 (2008) ( "When an attorney breaches the duty owed to his client, there is a presumption of fraud.") However, in this case, plaintiff was not the client of Aldridge defendants, the Eichorns were. Compl. ¶¶ 39-41. Plaintiff seeks to establish a breach of fiduciary duty or trust relationship with *opposing* counsel, for which no such relationship exists. Therefore, this court adopts the conclusions of law of the bankruptcy court, denying plaintiff's claim for fraudulent practices by attorneys on the pleadings.

13

5.    Persistence of Nonjusticiable Claims

Although presented as a separate claim by plaintiff, persistence of nonjusticiable claims is not an independent action recognized in North Carolina. Rather, pursuant to North Carolina General Statute § 6-21.5, a prevailing party may recover attorney's fees upon motion, where the court finds "that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." As noted by the bankruptcy judge, the plaintiff has failed to state a legitimate claim for persistence of nonjusticiable claims. Plaintiff agrees that asking for this type of damages is premature at this stage in the proceedings. Pl.'s Br. 24. Therefore, this court adopts the bankruptcy court's conclusions of law with respect to persistence of nonjusticiable claims.

## CONCLUSION

Upon *de novo* review of the conclusions of law in the bankruptcy court's October 2012 order,[6] this court OVERRULES plaintiff's objections, and AFFIRMS the bankruptcy court's order. Aldridge defendants' motion for judgment on the pleadings is GRANTED.

SO ORDERED, this the 6th day of March, 2013.

*/s/ Louise W. Flanagan*
LOUISE W. FLANAGAN
United States District Judge

---

[6] As noted earlier, the bankruptcy court's October 2012 order incorporates in part its July 2011 order. The parts of the July 2011 order adopted by the bankruptcy court, and in turn, this court are the first twelve (12) pages, the first sentence of the "Conclusion" section on page fifteen (15), and page sixteen (16).

14