IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CV-00763-FL

| | |
|---|---|
| In re: ) | |
| ) | |
| ROBERT V. RODGERS, ) | |
| ) | |
| Debtor, ) | |
| _____ ) | |
| ) | |
| ROBERT V. RODGERS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | ORDER |
| ) | |
| PREFERRED CAROLINAS REALTY, ) | |
| INC.; JAMES E. ALLEN, JR.; JIM ) | |
| ALLEN GROUP, INC.; HARRY ) | |
| JAMES THORPE; RANDALL ) | |
| EICHORN; LISA EICHORN; W. ) | |
| SIDNEY ALDRIDGE; and NICHOLLS ) | |
| & CRAMPTON, P.A.; ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on appeal by Robert Rodgers, debtor, from an order of the United States Bankruptcy Court dated September 16, 2013. Notice of appeal was filed September 25, 2013, pursuant to 28 U.S.C. § 158(a), within the time period allotted by Federal Rule of Bankruptcy Procedure 8002. The issues raised are ripe for adjudication. For the reasons that follow, the decision below is affirmed.

**STATEMENT OF THE CASE**

The underlying bankruptcy case subject of the present appeal has been subject of several previous orders by this court, and the court incorporates below much of the case background as previously set forth in the court's March 6, 2013, order.

Debtor Rodgers ("Rodgers") petitioned for relief under Chapter 13 of the Bankruptcy Code on October 20, 2009. On July 29, 2010, Rodgers instituted an adversary proceeding by filing complaint against Preferred Carolinas Realty, Inc. ("PCR"), James E. Allen, Jr. ("Allen"), Jim Allen Group, Inc. ("Jim Allen Group"), Harry James Thorpe ("Thorpe"), Randall and Lisa Eichorn ("the Eichorn defendants"), W. Sidney Aldridge ("Aldridge"), and Nicholls & Crampton, P.A. ("Nicholls & Crampton"). Therein, Rodgers asserted various claims for relief arising out of a real estate dispute.[1]

On July 7, 2011, the bankruptcy court granted the motion for judgment on the pleadings of defendants Aldridge and Nicholls & Crampton, P.A. ("Aldridge defendants") as to plaintiff's claims of abuse of process, persistence in nonjusticiable claims, infliction of emotional distress and

---

[1] In 2010, PCR, Allen, Jim Allen Group, and Thorpe filed a motion to dismiss and motion for judgment on the pleadings. On December 3, 2010, the bankruptcy court granted the motion as to PCR and Allen, but denied the motion as to Jim Allen Group and Thorpe. See Rodgers v. Preferred Carolinas Realty, Inc. (In re Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2010 WL 5014340 (Bankr. E.D.N.C. Dec. 3, 2010). Plaintiff appealed. On July 12, 2011, this court vacated and remanded the bankruptcy court's decision with regard to defendants PCR and Allen because the state court action relied on for purposes of *res judicata* was not a final judgment on the merits. See Rodgers v. Preferred Carolinas Realty, Inc. (In re Rodgers), No. 5:11-CV-153-FL, slip. op at 8 (E.D.N.C. July 12, 2011) ("Rodgers Order I"). As to Eichorn defendants, the bankruptcy court entered default against them on October 13, 2010, for failure to respond to summons. The Eichorn defendants moved to set aside, and that motion was granted by bankruptcy order on March 1, 2011. Rodgers v. Preferred Carolinas Realty, Inc. (In re Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2011 WL 799784 (Bankr. E.D.N.C. Mar. 1, 2011).

fraudulent practices by attorneys. Rodgers v. Preferred Carolinas Realty, Inc. (In re Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2011 WL 5909216 (Bankr. E.D.N.C. July 7, 2011). On August 24, 2011, Rodgers timely filed notice of appeal of the bankruptcy court's order, seeking reversal of the bankruptcy court's dismissal of the claims against Aldridge defendants. This court reversed and remanded the case by order on April 22, 2012, relying on the recent Supreme Court case Stern v. Marshall, 564 U.S. __, 131 S. Ct. 2594 (2011), and advised the bankruptcy court to inform as to the type of proceedings (i.e. whether they are "core" or "non-core") and source of its jurisdiction for the July 7, 2011, order. See Rodgers v. Preferred Carolinas Realty, Inc. (In re Rodgers), No. 5:11-CV-450-FL, slip. op at 10, n.5 (E.D.N.C. April 22, 2012) ("Rodgers Order II"). This court's April 2012 order did not reach the merits of plaintiff's claims against Aldridge defendants. Id.

On August 1, 2012, the bankruptcy court entered a third order finding that the claims are "non-core" pursuant to 28 U.S.C. § 157. Rodgers v. Preferred Carolinas Realty, Inc. (In re Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2012 WL 3133797 (Bankr. E.D.N.C. Aug. 1, 2012). Furthermore, the bankruptcy court found that it had jurisdiction, despite lack of consent from all parties, to decide plaintiff's claims under section 157(c)(1), and re-submitted its conclusions of law from the July 7, 2011, bankruptcy order.[2] Plaintiff objected to the August 1, 2012, bankruptcy order, raising again his previous arguments on the merits of the July 7, 2011, bankruptcy order. In addition, plaintiff pointed out confusion that arose among the parties as

---

[2] The bankruptcy court also noted that it "vacates the order with respect to its alternative reliance on *res judicata* grounds, given the district court's earlier ruling on that issue." Rodgers v. Preferred Carolinas Realty, Inc. (In re Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2012 WL 3133797 (Bankr. E.D.N.C. Aug. 1, 2012).

3

to the precise extent to which the August 1, 2012, bankruptcy order vacated its previous order where there was reliance on *res judicata*, which could conflict with this court's July 12, 2011, order (vacating the bankruptcy court's December 3, 2010, order).

On March 6, 2013, this court affirmed the proposed conclusions of law in the August 1, 2012, bankruptcy order and clarified which parts of the July 7, 2011, order were vacated where there was reliance on *res judicata*.[3]  See Rodgers v. Preferred Carolinas Realty, Inc. (In re Rodgers), No. 5:13-CV-161-FL, slip. op at 14, n.6 (E.D.N.C. March 6, 2013) ("Rodgers Order III").

On September 16, 2013, the bankruptcy court granted the motion for judgment on the pleadings of the Eichorn defendants as to plaintiff's claims of abuse of process, persistence in nonjusticiable claims, infliction of emotional distress, fraudulent practices by attorneys, and unfair and deceptive trade practices.  Rodgers v. Preferred Carolinas Realty, Inc. (In re Rodgers), Ch. 13 Case No. 09-09124-8-ATS, Adv. No. 10-00171-8-ATS (Bankr. E.D.N.C. Sept. 16, 2013).  Plaintiff objects to the September 16, 2013, bankruptcy order, specifically: (1) the bankruptcy court's adoption of the recitation of facts in its July 7, 2011, order; (2) its characterization of the claims against the Eichorn defendants as identical to those against Aldridge; and (3) its conclusions of law as to claims of abuse of process, infliction of emotional distress, and unfair and deceptive trade practices.

**STATEMENT OF FACTS**

This court set forth a detailed recitation of the relevant facts in Rodgers Order I in July 2011, Rodgers Order II in April 2012, and Rodgers Order III in March 2013.  For benefit of the record,

---

[3] The portion of the July 7, 2011, bankruptcy order adopted by the bankruptcy court, and in turn, this court are the first twelve (12) pages, the first sentence of the "Conclusion" section on page fifteen (15), and page sixteen (16).

4

the court reiterates and supplements those facts where necessary.

In December 2005, the Eichorn defendants were seeking to purchase a home and entered into an agency relationship with PCR and Allen to represent them in the process. Thorpe and Allen, agents for PCR, showed the Eichorn defendants property located in Wake Forest, North Carolina ("the property"). PCR told the Eichorn defendants that the property was owned by Toth Building Company, which was performing construction on the property. In fact, Rodgers, not Toth Building Company, was the actual owner of the property. Rodgers had hired Brandon Toth ("Toth") to oversee the construction on the property.

Through PCR, the Eichorn defendants entered into negotiations with Toth and Toth Building Company for the purchase of the property and the home to be constructed on the property. On December 8, 2005, PCR presented to the Eichorn defendants a written contract contemplating a purchase price of $502,500.00 and a closing date of April 14, 2006. The parties signed the contract, although Rodgers, the true owner of the property, had no knowledge of it. Unbeknownst to the Eichorn defendants, PCR modified the contract by "whiting out" the name of the seller, Toth Building Company, and substituting Rodgers' name.

In late December, 2005, Toth informed Rodgers that there was an offer to purchase the property for $502,500.00. For the next several months, the parties negotiated additional construction on the property. In October 2006, the Eichorn defendants learned that Rodgers was the actual owner of the property. In November 2006, Toth, Allen, and the Eichorn defendants through their retained counsel Aldridge of Nicholls & Crampton, met to finalize and execute an offer to purchase and contract for review by Rodgers. In January 2007, Rodgers rejected the Eichorn defendants' new offer to purchase the property.

On March 12, 2007, Aldridge, on behalf of the Eichorn defendants, filed a Notice of Lis Pendens against the property, and on April 2, 2007, the Eichorn defendants filed a complaint against Rodgers, PCR, Allen, Toth, and Toth Building Company in Wake County Superior Court.[4]  A flurry of cross-claims and counterclaims ensued, including, *inter alia*, a cross-claim by Rodgers against PCR and Allen for negligence, which claim also arose out of the real estate dispute.  On May 1, 2008, the parties entered into a settlement agreement that allowed the Eichorn defendants to purchase the property from Rodgers for $425,000.00 and required Rodgers' co-defendants to pay Rodgers $50,000.00.  Finally, the settlement agreement provided that "upon completion of all above conditions, parties will file stipulation of dismissal of all claims and counterclaims in the action with prejudice, to be filed by plaintiffs' attorney," and further provided that "mutual release [is] to be executed by all parties."  Rodgers contends that he signed the settlement agreement while under gross duress and undue influence.

In May 2008, Rodgers informed the other parties that he would not honor the settlement agreement.  The Eichorn defendants, PCR, and Allen filed motions to compel compliance with and to enforce the settlement agreement.  On July 3, 2008, the state court ordered Rodgers to comply with the settlement agreement, incorporating the settlement agreement by reference.  Rodgers appealed to the North Carolina Court of Appeals, which dismissed Rodgers' appeal.  Rodgers still refused to comply, prompting a second motion to compel compliance.  On August 25, 2009, the state court concluded that Rodgers had "willfully and without justification" refused to comply with the settlement agreement and again ordered Rodgers' compliance.

On October 20, 2009, Rodgers filed a voluntary Chapter 13 petition.  On July 29, 2010,

---

[4] See Eichorn v. Rodgers, Wake Co. Superior Court file number 07-CVS-3902.

Rodgers initiated the adversary proceeding against PCR, Allen, Jim Allen Group, Thorpe, the Eichorn defendants, Aldridge, and Nicholls & Crampton, asserting claims of gross negligence, fraud, constructive fraud, unfair and deceptive trade practices, and willful and wanton conduct, which claims arose out of the same transactions at issue in the state court proceedings and settlement agreement. Shortly thereafter, PCR, Allen, Jim Allen Group, and Thorpe filed motion for judgment on the pleadings, arguing, *inter alia*, that the settlement agreement was enforceable and barred Rodgers's complaint. The bankruptcy court granted the motion as to PCR and Allen, finding that Rodgers's claims against them were barred by principles of *res judicata*, but denied the motion as to Jim Allen Group and Thorpe because they were not parties to the original state court action. Rodgers appealed the dismissal of PCR and Allen, and this court vacated and remanded.

On December 6, 2010, Aldridge defendants filed a motion for judgment on the pleadings as to all claims against them. On July 7, 2011, the bankruptcy court granted judgment on the pleadings for Aldridge defendants, which was timely appealed. On April 22, 2012, this court reversed due to jurisdiction concerns, and did not reach the dispute on the merits. The bankruptcy court held a conference with the parties and entered an order on August 1, 2012, which was timely appealed. On March 6, 2013, this court affirmed and adopted the bankruptcy court's proposed conclusions of law.   On May 17, 2013, the Eichorn defendants filed a motion for judgment on the pleadings as to all claims against them. On September 16, 2013, the bankruptcy court granted judgment on the pleadings for the Eichorn defendants, which plaintiff appeals. This matter is now properly before the court. For the reasons that follow, the bankruptcy court's proposed conclusions of law are affirmed and adopted.

## DISCUSSION

A.      Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to review the bankruptcy court's order. "On appeal [from the bankruptcy court] the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. On appeal, findings of fact are reviewed for clear error, and questions of law are reviewed *de novo*. Bowers v. Atlanta Motor Speedway (In re Southeast Hotel Properties Ltd. Partnership), 99 F.3d 151, 154 (4th Cir. 1996); see also Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

The bankruptcy court granted judgment on the pleadings for the Eichorn defendants under Federal Rule of Civil Procedure 12(c), made applicable to proceedings in bankruptcy by Fed. R. Bankr. P. 7012(b). In reviewing a motion for judgment on the pleadings, the court applies "the same standard" as for motions made pursuant to Rule 12(b)(6). Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). Thus, when a party moves for judgment on the pleadings pursuant to Rule 12(c), the factual allegations of the complaint are taken as true, whereas those of the answer are taken as true only to the extent that they have not been denied or do not conflict with those in the complaint. Pledger v. North Carolina Dep't of Health and Human Services, 7 F. Supp. 2d 705, 707 (E.D.N.C.1998). A federal district court considering a motion to dismiss for failure to state a claim must view the allegations of the claim in the light most favorable to the non-moving party. See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir.1997). To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that

8

is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

B.   Analysis

    1.   Adoption of Recitation of Facts in July 2011 Bankruptcy Order

Plaintiff objects to the bankruptcy court's adoption of facts as recited in its July 7, 2011, order. In Rodgers Order III, this court confirmed the bankruptcy court, and in turn, this court adopted the portion of the July 2011 bankruptcy order containing the recitation of facts. Plaintiff did not lodge a timely appeal of that decision. Therefore, the court overrules this objection.

    2.   Characterization of Claims Against the Eichorn Defendants as Identical to Claims Against Aldridge

Plaintiff generally objects to the bankruptcy court's characterization of claims against the Eichorn defendants as the same as those against Aldridge. Plaintiff's complaint asserts claims of abuse of process, persistence in nonjusticiable claims, and infliction of emotional distress against both the Aldridge and the Eichorn defendants. The complaint's heading listing claims against both sets of defendants includes fraudulent practices by attorneys. (Compl. 11). However, plaintiff asserts a claim of fraudulent practices only against Aldridge and Nicholls & Crampton. (Id. ¶ 49). The bankruptcy court's characterization of claims against the Eichorn defendants is amended to the extent a claim of fraudulent practices is alleged only against Aldridge and Nicholls & Crampton.

    3.   Abuse of Process and Infliction of Emotional Distress

Plaintiff raises again his previous arguments on the merits of the July 2011 bankruptcy order. Where this court's March 2013 order affirmed the conclusions of law in the July 2011 bankruptcy order, this court incorporates by reference its discussion of the abuse of process and infliction of

9

emotional distress claims on the merits in Rodgers Order III, and briefly summarizes as follows.[5]

Plaintiff has failed to plead the second element of an abuse of process claim, namely that the act of filing Notice of Lis Pendens was for the purpose of gaining an advantage in some collateral matter. Plaintiff has failed to allege the requisite element of "severe emotional distress" for an infliction of emotional distress claim where he fails to list any particular emotional or mental disorder that is generally recognized and diagnosed by trained professionals. Therefore, for the reasons stated more fully in Rodgers Order III, this court adopts the proposed conclusions of law of the bankruptcy court that the complaint failed to state a claim for abuse of process, and either intentional or negligent infliction of emotional distress.

4.     Unfair and Deceptive Trade Practices

In his complaint, plaintiff limits his claim of unfair and deceptive trade practices to defendants PCR, Allen, and Thorpe ("PCR defendants"). (See Compl. 9-10). The bankruptcy court held that plaintiff did not plead this claim against the Eichorn defendants where this claim is listed in the section asserting claims for relief against the PCR defendants, and plaintiff did not assert the claim also was being brought against the Eichorn defendants. However, plaintiff objects and states he pleaded this claim against the Eichorn defendants by describing specific instances of their allegedly violative conduct. For purposes of this analysis, the court will assume without deciding that plaintiff pleaded this claim against the Eichorn defendants.

"Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or

---

[5] The bankruptcy court granted the Eichorn defendants' motion for the same reasoning employed in its July 7, 2011, order granting Aldridge's motion for judgment on the pleadings, which was adopted in part in the bankruptcy court's August 1, 2012, order and affirmed and adopted by this court in Rodgers Order III.

10

practices in or affecting commerce, are declared unlawful." N.C. GEN. STAT. § 75-1.1(a). "In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001) (citation omitted).

The statutory definition of "commerce" includes "all business activities, however denominated." N.C. GEN. STAT. § 75-1.1(b). The Supreme Court of North Carolina has interpreted "business activities" as "the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." Sara Lee Corp. v. Carter, 351 N.C. 27, 32 (1999) (quotation omitted).

Plaintiff alleges the following acts committed by the Eichorn defendants constitute unfair trade acts in violation of N.C. GEN. STAT. § 75-1.1(a): (1) requesting unreasonable and costly changes to construction plans; (2) refusing to sign the altered purchase contract and agreeing it was not an enforceable contract; (3) threatening to "tie up" the property in litigation if the parties could not agree on the terms of a purchase contract; (4) filing Notice of Lis Pendens even though they knew an enforceable contract did not exist; (5) making false representations at mediated settlement conference; and (6) making *ex parte* statements and false representations to state court about validity of mediated settlement agreement. (See Pl.'s Br. 15-16).

The court does not decide whether plaintiff has alleged the first element of an unfair trade act claim. Plaintiff has failed to allege any facts regarding the second element of such a claim. Namely, the complaint does not allege the Eichorn defendants' actions were "in or affecting

11

commerce" where it does not contain any factual allegations that the Eichorn defendants were engaged in business and that their actions were part of "the manner in which businesses conduct their regular, day-to-day activities, or affairs . . . ." Sara Lee, 351 N.C. at 32. See also Dalton, 353 N.C. at 657 ("We also note that while the statutory definition of commerce crosses expansive parameters, it is not intended to apply to all wrongs in a *business* setting.") (emphasis added); White v. Thompson, 364 N.C. 47, 53 (2010) (noting that the original statement of purpose of "the General Assembly explained that the Act would regulate two types of interactions in the business setting: (1) interactions between businesses, and (2) interactions between businesses and consumers."). Therefore, plaintiff has failed to state a claim for unfair trade practices. Accordingly, plaintiff's objection is overruled, and the bankruptcy court's proposed conclusion of law is affirmed.

## CONCLUSION

Upon *de novo* review of the conclusions of law in the bankruptcy court's September 16, 2013, order, this court OVERRULES plaintiff's objections, and AFFIRMS the bankruptcy court's order. The Eichorn defendants' motion for judgment on the pleadings is GRANTED.

SO ORDERED, this the 26th day of November, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge