IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CV-764-FL

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROBERT V. RODGERS, | ) | |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| ROBERT V. RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| PREFERRED CAROLINAS REALTY, | ) | |
| INC.; JAMES E. ALLEN, JR.; JIM | ) | |
| ALLEN GROUP, INC.; HARRY | ) | |
| JAMES THORPE; RANDALL | ) | |
| EICHORN; LISA EICHORN; W. | ) | |
| SIDNEY ALDRIDGE; and NICHOLLS | ) | |
| & CRAMPTON, P.A.; | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on appeal by Preferred Carolinas Realty, Inc. ("Preferred

Carolinas"), James E. Allen, Jr. ("Allen"), Jim Allen Group, Inc. ("Jim Allen Group"), and Harry

James Thorpe ("Thorpe"), from an order of the United States Bankruptcy Court dated September

30, 2013, denying their renewed motion to dismiss and for judgment on the pleadings. Objections

were filed October 11, 2013, within the time period allotted by Federal Rule of Bankruptcy

Procedure 9033. The issues raised are ripe for adjudication. The bankruptcy court's proposed

conclusions of law are accepted in part and rejected in part, and this proceeding withdrawn, for the reasons that follow.

## STATEMENT OF THE CASE

Debtor and plaintiff, Robert V. Rodgers ("plaintiff"), petitioned for relief under Chapter 13 of the Bankruptcy Code on October 20, 2009.  On July 29, 2010, plaintiff instituted an adversary proceeding through complaint against defendants Preferred Carolinas, Allen, Jim Allen Group, and Thorpe (collectively "the remaining defendants").  The complaint also named as defendants Randall and Lisa Eichorn ("the Eichorns"), and their attorney, W. Sidney Aldridge ("Aldridge"), and his law firm, Nicholls & Crampton, P.A. ("Nicholls & Crampton").  Plaintiff's claims for relief  arise out of a real estate dispute as more particularly described.

In 2010, the remaining defendants filed a motion to dismiss and for judgment on the pleadings.  On December 3, 2010, the bankruptcy court granted the motion as to defendants Preferred Carolinas and Allen, but denied the motion as to defendants Jim Allen Group and Thorpe.  See Rodgers v. Preferred Carolinas Realty, Inc. (*In re* Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2010 WL 5014340, at *6 (Bankr. E.D.N.C. Dec. 3, 2010).  Plaintiff appealed.  On July 12, 2011, this court vacated and remanded the bankruptcy court's decision with regard to defendants Preferred Carolinas and Allen because the state court decision relied on for purposes of *res judicata* was not a final judgment on the merits.  See Rodgers v. Preferred Carolinas Realty, Inc. (*In re* Rodgers), No. 5:11-CV-153-FL, slip op. at 8 (E.D.N.C. July 12, 2011) ("Rodgers Order I").

On July 7, 2011, the bankruptcy court granted motion on behalf of defendants Aldridge and Nicholls & Crampton as to plaintiff's claims against them.  Rodgers v. Preferred Carolinas Realty,

2

Inc. (_In re_ Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2011 WL 5909216, at *8 (Bankr. E.D.N.C. July 7, 2011).  On August 24, 2011, plaintiff timely filed notice of appeal of the bankruptcy court's order, seeking reversal of the bankruptcy court's dismissal of claims against defendants Aldridge and Nicholls & Crampton.  This court reversed and remanded the case by order on April 22, 2012, relying on the recent Supreme Court case Stern v. Marshall, 564 U.S. ___, 131 S. Ct. 2594 (2011), and advised the bankruptcy court to inform as to the type of proceedings (i.e., whether they are "core" or "non-core") and source of its jurisdiction for the July 7, 2011, order.  See Rodgers v. Preferred Carolinas Realty, Inc. (_In re_ Rodgers), No. 5:11-CV-450-FL, slip op. at 10 n.5 (E.D.N.C.  April 22, 2012) ("Rodgers Order II").  This court did not reach the merits of plaintiff's claims against defendants Aldridge and Nicholls & Crampton. Id.

On August 1, 2012, the bankruptcy court entered a third order finding that the claims are "non-core" pursuant to 28 U.S.C. § 157.  Rodgers v. Preferred Carolinas Realty, Inc. (_In re_ Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2012 WL 3133797 (Bankr. E.D.N.C. Aug. 1, 2012).  Furthermore, the bankruptcy court found that it had jurisdiction, despite lack of consent from all parties, to decide plaintiff's claims under section 157(c)(1), and resubmitted its conclusions of law from the July 7, 2011, bankruptcy order.[1]  Plaintiff objected to the August 1, 2012, bankruptcy order.

While relying on prior arguments, plaintiff also pointed out confusion arising among the parties as to the precise extent to which the August 1, 2012, order vacated the bankruptcy court's previous order where there was reliance on _res judicata_, which could conflict with the district court's July 12, 2011, order (vacating the bankruptcy court's December 3, 2010, order).  This court

---

[1]  The bankruptcy court also notes that it "vacates the order with respect to its alternative reliance on _res judicata_ grounds, given the district court's earlier ruling on that issue."  Id.

3

accepted as its own the proposed conclusions of law set forth in the August 1, 2012, bankruptcy

order, which reached the merits of plaintiff's claims against defendants Aldridge and Nicholls &

Crampton, dismissing plaintiff's claims against them.  This court also clarified which parts of the

July 7, 2011, bankruptcy order were vacated where there was reliance on *res judicata*.  See Rodgers

v. Preferred Carolinas Realty, Inc. (*In re* Rodgers), No. 5:13-CV-161-FL, slip op. at 14 n.6

(E.D.N.C. March 6, 2013) ("Rodgers Order III").

On September 16, 2013, the bankruptcy court granted the motion on behalf of the Eichorns

as to plaintiff's claims against them.  Rodgers v. Preferred Carolinas Realty, Inc. (*In re* Rodgers),

Ch. 13 Case No. 09-09124-8-ATS, Adv. No. 10-00171-8-ATS (Bankr. E.D.N.C. Sept. 16, 2013).

Plaintiff timely appealed the September 16, 2013, bankruptcy order, which this court also affirmed.

See Rodgers v. Preferred Carolinas Realty, Inc. (*In re* Rodgers), No. 5:13-CV-00763-FL (E.D.N.C.

Nov. 26, 2013) ("Rodgers Order IV").

The remaining defendants filed their renewed motion to dismiss and for judgment on the

pleadings[2] as to all claims against them on May 22, 2013, arguing, *inter alia*, that the settlement

agreement as a matter of contract precludes plaintiff from asserting claims against them.  On

September 30, 2013, the bankruptcy court disagreed and denied the remaining defendants' renewed

motion to dismiss and motion for judgment on the pleadings.  Rodgers v. Preferred Carolina Realty,

Inc. (*In re* Rodgers), Ch. 13 Case No. 09-09124-8-ATS, Adv. No. 10-00171-8-ATS (Bankr.

---

[2]  The remaining defendants filed the renewed motion to dismiss and for judgment on the pleadings pursuant to Federal
Rules of Civil Procedure 12(b)(6) and (c), made applicable to proceedings in bankruptcy by Federal Rule of Bankruptcy
Procedure 7012(b).  Because the remaining defendants filed motion after the pleadings closed,  "a Rule 12(c) motion
for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted," would
have been the proper conduit for this presentation.  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).
However, where the standards of review for motions made under Rules 12(b) and (c) are identical, there is no real issue
concerning, also given the court's determination, as herein set forth, that as decided by the Fourth Circuit with respect
to a Rule 12(b) motion, on a Rule 12(c) motion,  a court may consider an attachment to an answer if it was integral to
and explicitly relied on in the complaint and if the plaintiff does not challenge its authenticity.

E.D.N.C. Sept. 30, 2013).  Its treatment of that motion brings the matter, on objection of the remaining defendants, now back before this court.

### STATEMENT OF FACTS

Given the procedural posture of the case, the following factual statement necessarily rests on allegations drawn from the complaint, accepted as true for purposes of the instant motion, together with that document referred to by defendants in their answer as a settlement agreement, to which reference is made in the complaint.  Authenticity of that document is not in dispute.

To put it bluntly, the complaint is not a model of precision in pleading.  "Preferred Carolinas" is used singularly, as a shorthand for the corporation, and sometimes collectively to refer to each of the other defendants remaining:  Allen; Jim Allen Group; and Thorpe.  (Compl. ¶¶ 2, 3, 4, 5).[3]  Preferred Carolinas is alleged to have acted as a real estate agent for plaintiff and for the Eichorns, who in December 2005, were seeking to purchase a home.  (Compl. ¶ 10).  Preferred Carolinas, by and through Allen and Thorpe, agents, brokers, or employees of Preferred Carolinas, was directly involved in the buying process, together with Allen's asserted alter ego, Jim Allen Group.  (Compl. ¶¶ 10, 18).

At the time, plaintiff owned Lot 19, Great Falls Estates, Wake County, North Carolina ("Lot 19 ").  (Compl. ¶ 13).  Plaintiff alleges, based on information and belief, that Preferred Carolinas was the exclusive sales agent for the development encompassing Lot 19.  (Compl. ¶ 18).  The Eichorns viewed Lot 19, on which plaintiff had begun building a home.  (Compl. ¶¶ 13, 15).  On

---

[3]  The reference is sought to be limited in instances, too, separately to distinguish Preferred Carolinas's vicarious liability for the alleged acts of defendants Allen and Thorpe.  (Compl. ¶ 10).  For example, in the first cause of action, labeled "Gross Negligence, Willful and Wanton Conduct," it is alleged "Preferred Carolinas, Allen, and Thorpe, and Preferred Carolinas through its agents described herein, owed a duty to plaintiff to represent plaintiff using their reasonable skills, care, diligence, and loyalty."  (Compl. ¶ 27).  General factual allegations about what Preferred Carolinas did or did not are understood to refer to Preferred Carolinas, Allen, Jim Allen Group, and Thorpe, unless otherwise specified.

5

December 8, 2005, the Eichorns executed a written offer to purchase and contract for Lot 19 for a purchase price of $502,500.00, which set a closing date of May 30, 2006, and listed Toth Building & Development ("Toth Building") as the owner of the property instead of plaintiff. (Compl. ¶¶ 2-5, 15; Compl. Ex. B at 1, 4-5).

Someone on behalf of Preferred Carolinas drafted that document, referred to in the complaint as the "Purported Purchase Contract," (Compl. ¶ 16), and Brandon M. Toth ("Toth") executed the contract on the behalf of Toth Building. (Compl. ¶ 15; Compl. Ex. B at 5). Plaintiff, the true owner of the property, had no knowledge of the Purported Purchase Contract. (Compl. ¶ 15). At some unspecified time in the late summer or early fall of 2006, unbeknownst to the Eichorns, someone on behalf of Preferred Carolinas altered the Purported Purchase Contract by "whiting out" the name of the seller, Toth Building, and causing plaintiff's initials and signature to be forged upon it. (Compl. ¶¶ 17, 20; Compl. Ex. C).

Subsequently, someone on behalf of Preferred Carolinas represented to plaintiff, as his selling agent, that the Eichorns were interested in purchasing the property and likely would sign an offer to purchase if he would accede to certain additions or modifications to his original building plans for the home on Lot 19. (Compl. ¶ 18). For the next several months, relying on these representations, plaintiff attempted to meet the demands of the Eichorns for additional improvements to the property. (Id.) During this time, Preferred Carolinas withdrew the property from the sales market and exclusively dealt with the Eichorns in the hopes of consummating a sale of the improved property. (Id.)

In early October 2006, plaintiff halted construction on Lot 19 because of increasingly unreasonable and costly change requests the Eichorns made to his construction plans. (Compl. ¶

6

19).  Plaintiff informed Preferred Carolinas that he would make no additional changes to his construction plans until the Eichorns executed a valid offer to purchase, with a purchase price inclusive of the total costs of the requested changes.  (Id.)

Later in October or November 2006, the Eichorns retained Aldridge and Nicholls & Crampton to represent them in consummating the purchase of Lot 19. (Compl. ¶ 20).  In November 2006, Preferred Carolinas tendered to the Eichorns, in the presence of Aldridge, the Purported Purchase Contract.  (Id.)  The Eichorns, recognizing inconsistency in the document, refused to acknowledge or initial the altered contract, and Aldridge declared that there was no valid offer to purchase Lot 19.  (Id.)

Subsequently, some unspecified person or persons on behalf of Preferred Carolinas informed plaintiff for the first time of the Purported Purchase Contract and the altered one, referred to by plaintiff as the "Altered Purported Contract."  (Id.)  Plaintiff also was told of the lawyer's statement that they were not enforceable.  (Id.)

For several months following the November 2006 meeting, the Eichorns and Aldridge continued to negotiate through Preferred Carolinas for a contract to purchase Lot 19. (Compl. ¶ 21). During these negotiations, the Eichorns and Aldridge threatened to "tie up" Lot 19 in litigation if the Eichorns and plaintiff could not agree on purchase terms.  (Id.)  Despite these threats, Preferred Carolinas put the property back on the sales market and found buyers who were willing to purchase for $550,000.00.  (Id.)

Then on March 12, 2007, Aldridge, on behalf of the Eichorns, filed a notice of lis pendens on Lot 19 and a complaint against plaintiff, Preferred Carolinas, Allen, Toth, and Toth Building in

7

Wake County Superior Court, seeking specific performance.[4]    (Compl. ¶¶ 22-23).    After commencement of the state court proceeding, plaintiff, who could realize no sale of Lot 19 to another due to the lien, and could not obtain further construction financing, defaulted on his construction loan.  (Compl. ¶ 23).  The parties subsequently submitted to mediated settlement conference.  (Compl. ¶ 24A).

On May 1, 2008, plaintiff, together with the Eichorns, Allen, Preferred Carolinas, and Toth executed in the state court proceeding the document referred to by defendants as a settlement agreement under which the Eichorns agreed to purchase the property from plaintiff for $425,000.00, with closing within sixty (60) days.  (Compl. ¶ 24A; Answer Ex. A at 1).  It also required Toth and Toth Building to pay the sum of $15,000.00 to plaintiff at time of closing,[5] and Preferred Carolinas and Allen to pay plaintiff the sum of $35,000.00 at time of closing.  (Answer Ex. A at 1-2). Preferred Carolinas and Allen also agreed to waive any claim for commission owed pursuant to the listing agreement with plaintiff.  (Answer Ex. A at 2).

The settlement agreement dated May 1, 2008, further provided that "[u]pon the completion of all above conditions parties will file stipulation of dismissal of all claims and counterclaims in the action with prejudice, to be filed by plaintiff's [sic] attorney."  (Id.)  The document provides in a succeeding reference that a "Mutual Release [is] to be executed by all parties."  (Id.)  As reflected in the record, plaintiff sought to persist in ownership of Lot 19 despite his entry into that agreement.

---

[4]  See Eichorn v. Rodgers, Wake Co. Superior Court file number 07-CVS-3902.

[5]  For unexplained reason, while there is a space set aside for a signature on behalf of defendant Toth Building, the document does not reflect signature of its authorized representative.  As noted, neither Toth nor Toth Building is named as a defendant herein.

8

Plaintiff contends that he signed the settlement agreement, also executed by his attorney, while under gross duress and undue influence. (Compl. ¶ 24A).

On October 20, 2009, plaintiff sought bankruptcy protection. (Compl. ¶ 25). Foreclosure proceedings on Lot 19 were completed after the bankruptcy court lifted the automatic stay. (Compl. ¶ 51A).

This adversary proceeding followed in 2010. In addition to those signatories to the purported settlement agreement – the Eichorns, Preferred Carolinas, and Allen – plaintiff named as defendants Jim Allen Group and Thorpe together with the Eichorns' attorney and his law firm. (See Compl.) As noted, only signatory defendants Preferred Carolinas and Allen, and non-signatory defendants Jim Allen Group and Thorpe, remain in this action. Again, these are the remaining defendants which plaintiff sometimes describes collectively as Preferred Carolinas. Yet, sometimes he separately distinguishes in the complaint the two agents of Preferred Carolinas, Allen and Thorpe, from Preferred Carolinas.

In addition to that catchall negligence claim labeled "Gross Negligence, Willful and Wanton Conduct," plaintiff asserts against defendants identified as Preferred Carolinas, Allen, and Thorpe, a fraud claim, "Fraud and Constructive Fraud," as well as a claim under North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. §§ 75-1.1, et seq. The Eichorns, Aldridge, and Nicholls & Crampton were the subject of a separate claim entitled "Abuse of Process; Persisting in Non-Justiciable Claims; and Fraudulent Practices by Attorneys," which also included allegations of infliction of emotional distress.

That claim of infliction of emotional distress is threaded by plaintiff in his complaint also against Preferred Carolinas, Allen, Jim Allen Group, and Thorpe, where plaintiff alleges "[t]o the

9

extent that their actions joined in and concurred with the actions of [those] defendants, defendants Preferred Carolinas, Allen, and Thorpe are liable for the claims described hereinafter [against the Eichorns, Aldridge, and Nicholls & Crampton]." (Compl. ¶ 37). While the allegations against the latter group sounding in abuse of process and fraudulent attorney practices are distinctly adhered to those now dismissed defendants, the court reads the claim of infliction of emotional distress as one also stated against the remaining defendants who allegedly were involved in creation of the Purported Purchase Contract and the Altered Purported Contract. This reading into the claims against the remaining defendants a claim also for infliction of emotional distress is supported, too, by specific allegations of fact. (Compl. ¶ 24).

## DISCUSSION

A.     Standard of Review

This court has jurisdiction pursuant to 28 U.S.C. § 157(c)(1) to review the bankruptcy court's proposed findings of fact and conclusions of law. This court "shall make a de novo review upon the record . . . of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made." Fed. R. Bankr. P. 9033(d); see also Humboldt Express, Inc. v. Wise Co. (In re Apex Express Corp.), 190 F.3d 624, 630 (4th Cir. 1999) (de novo standard applies to both findings of fact and conclusions of law). This court "may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033(d).

As noted, the bankruptcy court denied the remaining defendants' motion under Rule 12 of the Federal Rules of Civil Procedure, made applicable to proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7012(b). In reviewing a motion for judgment on the pleadings, the court

applies "the same standard" as for motions made pursuant to Rule 12(b)(6).  Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002).

Thus, when a party moves for judgment on the pleadings pursuant to Rule 12(c), the well-pleaded "factual allegations of the non-moving party's pleading are taken as true, whereas the allegations in the movant's pleading are taken as true only to the extent that they have not been denied or do not conflict with those in the non-movant's pleading."  United States v. McDaniel Personal Prop., No. 7:12-CV-314-FL, 2014 WL 347466, at *1 (E.D.N.C. Jan. 30, 2014) (citing Pledger v. N.C. Dep't of Health & Human Servs., 7 F. Supp. 2d 705, 707 (E.D.N.C. 1998)).

Therefore, to survive a motion for judgment on the pleadings, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In evaluating whether judgment on the pleadings should be granted, "a court accepts all well-pled facts as true and construes these facts in the light most favorable" to the non-moving party, but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement."  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).  Nor must the court accept "unwarranted inferences, unreasonable conclusions, or arguments."  Id.

B.     Consideration of the Settlement Agreement

The remaining defendants argue that the settlement agreement bars plaintiff's claims against them.  They acknowledge the settlement agreement does not have *res judicata* effect, consistent with this court's earlier determination, but urge it is enforceable as a matter of law.

Plaintiff contends among other things that the bankruptcy court and this court's earlier

11

rulings on *res judicata* are dispositive of this issue and preclude enforcement of the settlement agreement.  In addition, plaintiff contends the settlement agreement is an unenforceable "agreement to agree" because material terms are unsettled.

As an initial matter, the court must determine whether it may consider the settlement agreement, attached as an exhibit to the remaining defendants' answer, in ruling on the instant motion made under Rule 12(c), without first converting it into a motion for summary judgment under Rule 56.  See Fed. R. Civ. P. 12(d).  Federal Rule of Civil Procedure 12(d) contains a conversion provision which states that: "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

In ruling on a motion for judgment on the pleadings, the court considers the pleadings which are defined to include the complaint and answer to complaint.  See Fed. R. Civ. P. 7(a).  Rule 10(c) of the Federal Rules of Civil Procedure provides in part that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."   That rule also addresses the effect of an adoption by reference, providing that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  Fed. R. Civ. P. 10(c)

In an unpublished decision, the Fourth Circuit, affirming a district court's order dismissing a *pro se* plaintiff's complaint for failure to effect sufficient service of process and for failure to state a claim upon which relief can be granted, quoted from Federal Rule of Civil Procedure 10(c) that a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," before giving a nod to an Eleventh Circuit decision in accordance.  Danik v. Hous. Auth. of Baltimore City, 396 F. App'x 15, 16 (4th Cir. 2010) (citing Horsley v. Feldt, 304 F.3d 1125, 1134

12

(11th Cir. 2002) ("It would seem to follow [from Rule 10(c) ] that if an attachment to an answer is a 'written instrument,' it is part of the pleadings.")).

In <u>Horsley</u>, the Eleventh Circuit applied in the Rule 12(c) context the "incorporation by reference" doctrine used to determine whether attachments to Rule 12(b)(6) motions can be considered in ruling on those motions.  304 F.3d at 1134.  The <u>Horsley</u> court held:

> Although we have not previously examined Rule 10(c)'s written instrument provision in the context of a Rule 12(c) motion for judgment on the pleadings, we have addressed a similar issue under Rule 12(b)(6) involving matters attached to a motion to dismiss. Our analysis there is instructive, because the conversion provision applicable to Rule 12(b)(6) motions is identical to the one applicable to Rule 12(c) motions, and they serve the identical purpose of preventing the circumvention of the Rule 56 notice and opportunity to be heard provisions when extraneous materials are considered.
>
> Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine, <u>see</u> <u>In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970</u> (9th Cir.1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment *only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed*. <u>See</u> <u>Harris v. Ivax Corp.</u>, 182 F.3d 799, 802 n.2 (11th Cir.1999). "Undisputed" in this context means that the authenticity of the document is not challenged. <u>See, e.g.</u>, <u>Beddall v. State Street Bank and Trust Co.</u>, 137 F.3d 12, 16–17 (1st Cir.1998); <u>GFF Corp. v. Associated Wholesale Grocers, Inc.</u>, 130 F.3d 1381, 1384 (10th Cir.1997); <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir.1994). Given that the operative rule language is identical and that the provisions serve the same purpose, we believe that the Rule 12(b)(6) incorporation by reference doctrine should apply in Rule 12(c) cases as well.
>
> We recognize, of course, that the "written instrument" provision of Rule 10(c) ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes") is applicable to pleadings and not to motions, but we do not believe it dictates a different result insofar as the incorporation by reference doctrine is concerned. That doctrine with its two requirements must apply for Rule 12(c) purposes to documents attached to answers just as it

13

> applies for Rule 12(b)(6) purposes to documents attached to motions to dismiss. Otherwise, the conversion clause of Rule 12(c) [now located at Rule 12(d)] would be too easily circumvented and disputed documents attached to an answer would have to be taken as true at the pleadings stage. The written instrument provision of Rule 10(c) does not require that.

Id. at 1134-35 (emphasis added).  It does not appear that the Fourth Circuit has ruled on the precise issue of whether the court may consider an attachment to an answer in ruling on a Rule 12(c) motion.  While citing Horsley, 304 F.3d at 1134, favorably for the proposition that an attachment to an answer is part of the pleadings, it did not express an opinion on the Horsley court's holding regarding whether a district court may consider attachments to the answer in this context.  See Danik, 396 F. App'x at 16.

It follows in this court's opinion, also hewing to the reasoning applied in the Horsley decision, that an attachment to an answer may be considered when considering a Rule 12(c) motion subject, however, to prescribed limitations.  Other courts within this circuit have followed Horsley, too, and applied the "incorporation by reference" doctrine to determine whether an attachment to an answer can be considered in ruling on a Rule 12(c) motion.  See, e.g., Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 726-27 (M.D.N.C. 2012) (citing Horsley, 304 F.3d at 1134-35, for the proposition that documents attached to the answer "may be considered without converting a motion for judgment on the pleadings into a motion for summary judgment only if the documents are central to the Plaintiff's claim and the authenticity is not challenged"); Brockman v. Am. Suzuki Motor Corp., C/A No. 6:11-3381-TMC, 2012 WL 3264995, at *3 (D.S.C. Aug. 10, 2012) (same); Lefkoe v. Jos. A. Bank Clothiers, Civil No. WMN-06-1892, 2008 WL 7275126, at *4-5 (D. Md. May 13, 2008) (same).

The "incorporation by reference" standard drawn from the Rule 12(b) context in Horsley,

14

and applied there by the Eleventh Circuit on a Rule 12(c) motion, and held determinative of whether the document may be considered without converting the motion into one for summary judgment, requires that "the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." 304 F.3d 1125, 1134. As noted, "undisputed" was defined to mean that the authenticity of the document is not challenged. Id. In this circuit that standard with respect to a Rule 12(b)(6) motion similarly requires that the attached document be "integral to and explicitly relied on in the complaint and [if the] plaintiffs do not challenge its authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (citing Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)).

Applying that standard here, in the context of a Rule 12(c) motion, this court must assess whether the settlement agreement is integral to and explicitly relied on in the complaint. Its authenticity is not challenged. If it is not integral to and explicitly relied on by plaintiff, in order for this court to consider the document at this juncture, the remaining defendants' motion must be converted to one resting on Rule 56.

Plaintiff incorporates the purported settlement agreement by reference only in pleading the infliction of emotional distress claim, wherein he disclaims the effectiveness of that document. (See Compl. ¶ 24). Specifically, plaintiff references "signing a hand-written document, under gross duress and undue influence, which was never reduced to a formal agreement because the parties could not agree on material terms of the hand-written document." (Id. ¶ 24A). This action is alleged to have contributed to plaintiff's "severe emotional distress and undue pain and mental suffering." (Id. ¶ 24). The settlement agreement is not explicitly or implicitly made reference to in any of the other claims by plaintiff against the remaining defendants.

15

At to that claim of plaintiff's which makes any reference to the settlement agreement, as noted in previous orders in the case, in North Carolina, a cause of action may be brought for either intentional infliction of emotional distress or negligent infliction of emotional distress. Intentional infliction of emotional distress consists of: 1) extreme and outrageous conduct; 2) that is intended to cause severe emotional distress to another; and 3) that does in fact cause severe emotional distress to another. Holloway v. Wachovia Bank & Trust Co., 339 N.C. 338, 351 (1994). Negligent infliction of emotional distress requires the plaintiff to allege that: 1) defendant negligently engaged in conduct; 2) it was reasonably foreseeable that such conduct would cause plaintiff severe emotional distress; and 3) that conduct did in fact cause plaintiff severe emotional distress. McAllister v. Ha, 347 N.C. 638, 645 (1998).

"Severe emotional distress" is defined by the same standards in both causes of action, and means "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Holloway, 339 N.C. at 355.

The court finds that plaintiff has failed to allege the requisite element of "severe emotional distress" for an infliction of emotional distress claim where he fails to list any particular emotional or mental disorder that is generally recognized and diagnosed by trained professionals. Id. Accordingly, the court grants the remaining defendants' motion with respect to the infliction of emotional distress claim, and that claims falls away.

As a result, there are no remaining claims in the complaint where allegations concerning that document made a part of the answer have any bearing on plaintiff's theory of the case. The

pleadings include no reply to the answer as none was ordered.  See Fed. R. Civ. P. 7.  The court cannot under the law as previously set forth consider the purported settlement agreement in ruling on the instant Rule 12(c) motion where it is neither integral to nor explicitly relied on with respect to the claims remaining.

The rationale underlying this exception to a general rule against considering extrinsic evidence at the Rule 12 stage addresses the situation where a plaintiff relies on part of some document to prove a claim and here, there is no reliance with respect to plaintiff's fraud claim or any other remaining claim on the purported settlement agreement.  As the Fourth Circuit in <u>American Chiropractic</u> noted:

> The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint." What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

367 F.3d at 234 (quoting <u>In re Burlington Coat Factory Secs. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997)).

The remaining defendants seek to impress effectiveness of this partially executed document now to release both signatory and non-signatory defendants, with reference also to state court proceedings previously undertaken, of which they request this court take judicial notice.  Plaintiff has been on notice that this is, at the least, the position of the two signatory defendants for a very long time.  Still, that agreement relied on by the signatory and non-signatory defendants is not integral to and explicitly relied on by plaintiff, and must be excluded under Rule 12(c).  So the

17

question now is raised as to whether the instant motion must be treated as one for summary judgment. See Fed. R. Civ. P. 12(d).

Where to date no order on discovery scheduling has issued in this case, the court will not convert the motion. The court excludes consideration of the document for reasons given, and now proceeds to consider what is left to be decided in the context of a Rule 12(c) motion.

## C.    Claims Against the Remaining Defendants

Having dispensed with one claim on its merits, there appear seven not altogether artfully pleaded claims remaining:   1) fraud; 2) constructive fraud; 3) breach of fiduciary duty; 4) negligence;[6] 5) gross negligence; 6) willful and wanton conduct; and 7) and unfair or deceptive trade practices.   The court now turns its attention to address of the other grounds offered in support of the instant motion for judgment on the pleadings, and concludes for reasons herein discussed that none are availing.

### 1.    Agency Defense

The remaining defendants contend, based on the allegations in the complaint, that Allen and Preferred Carolinas are principals of Jim Allen Group and Thorpe, respectively.[7] They assert that an agent may not be held liable by a third-party for actions done within the scope of his authority

---

[6]  In the complaint, plaintiff does not indicate the assertion of a negligence claim against the remaining defendants, only claims for gross negligence and willful and wanton conduct.  However, pleading gross negligence necessarily requires pleading facts related to negligence plus an additional factor, which is discussed by the court in Section C.4.  Plaintiff is not required to use the word "negligence" to allege a negligence claim.  See Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 418 (4th Cir. 2014) ("Appellants, however, were not required to use any precise or magical words in their pleading."); E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 447-48 (4th Cir. 2011) (rejecting argument that counterclaim had to include word "price discrimination" to allege a claim for price discrimination).

[7]  Plaintiff pleads that Jim Allen Group is the alter ego of Allen while Allen, Jim Allen Group, and Thorpe are alleged to be agents of Preferred Carolinas.  The court notes under North Carolina law that "agency and alter ego are distinct legal concepts.  A principal-agent relationship is based upon delegation of authority from the principal to the agent so that the agent is said to be representing the principal, while alter egos are seen in the law as being the same entity." Trivette v. Yount, 366 N.C. 303, 308 (2012) (internal citations omitted).

for a disclosed principal, relying on Tetterton v. Ocwen Fed. Bank (*In re* Tetterton), 379 B.R. 595, 600 (Bankr. E.D.N.C. 2007) (citing Walston v. R.B. Whitley & Co., 226 N.C. 537, 540 (1946)), as cited in the bankruptcy court's July 7, 2011, order.

It is true, as the remaining defendants contend, that an agent cannot be held liable to third-parties for actions done within the scope of his authority for a disclosed principal.  See Walston, 226 N.C. at 540.  However, an agent is subject to personal liability for torts committed even within the scope of that authority.  See Palomino Mills v. Davidson Mills Corp., 230 N.C. 286, 292 (1949) ("[I]t is thoroughly well settled that a man is responsible for all torts committed by him . . . notwithstanding he may have acted as the agent or under directions of another.") (quotation omitted); Sell v. Hotchkiss, 264 N.C. 185, 189 (1965) ("As to third persons, the principal and his agent are jointly and severally liable for the agent's negligent acts committed within the scope of his employment . . . .").

All of plaintiff's claims against the remaining defendants are based in tort.[8]  Therefore, these defendants are not entitled to judgment on the pleadings, as they argue, because plaintiff complains of actions taken by Allen, Jim Allen Group, or Thorpe, as agents.  See  Palomino Mills, 230 N.C. at 292.  The court now parses each of the seven claims remaining below in address of the issues raised on Rule 12(c) motion as to sufficiency of the pleadings.

---

[8]  Although the unfair or deceptive trade practices claim is a statutory claim, it is based on Allen, Jim Allen Group, and Thorpe's allegedly tortious acts.  Thus, defendants Allen, Jim Allen Group, and Thorpe are subject to personal liability for unfair or deceptive trade practices based on these torts, regardless of whether they acted within the scope of their authority.  See Baker v. Rushing, 104 N.C. App. 240, 247 (1991) ("Mosley argues that his status as an agent precludes his personal liability for the alleged torts . . . and for the claims based on his alleged tortious conduct, specifically the claim for unfair or deceptive trade practices, N.C.G.S. § 75-1.1 . . . .  We disagree.  It is well settled in North Carolina that a person is personally liable for all torts committed by him, notwithstanding that he may have acted as an agent for another . . . ."); Palomino Mills, 230 N.C. at 292.

2.      Fraud and Constructive Fraud

Fraud may be actual or constructive.  Watts v. Cumberland County Hosp. Sys., Inc., 317 N.C. 110, 115 (1986).  The elements of actual fraud are:  1) false representation or concealment of a material fact;  2) reasonably calculated to deceive;  3) made with intent to deceive;  4) that does in fact deceive (or reasonably induce reliance); and  5) results in injury.  Anderson v. Sara Lee Corp., 508 F.3d 181, 189 (4th Cir. 2007); Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 567-69 (1988).  "A false representation is material when it deceives a person and induces him to act."  Keith v. Wilder, 241 N.C. 672, 675 (1955).  "Additionally, any reliance on the allegedly false representations must be reasonable.  The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion."  Forbis v. Neal, 361 N.C. 519, 527 (2007) (citation omitted).

With respect to constructive fraud plaintiff must allege facts and circumstances:  "(1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff."  Watts, 317 N.C. at 116 (internal quotation marks omitted).  "[C]onstructive fraud differs from actual fraud in that it is based on a confidential relationship rather than a specific misrepresentation.  Another difference is that intent to deceive is not an element of constructive fraud."  Forbis, 361 N.C. at 528-29 (quotation omitted).

The remaining defendants contend plaintiff has not pleaded his fraud claim with sufficient particularity.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "[T]he circumstances required to be pled with

20

particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks omitted).

Plaintiff has pleaded the fraud claim with sufficient particularity, albeit barely. First, the complaint lists the time of the alleged misrepresentation. The misrepresentation is alleged to have occurred close to early October 2006. Second, the contents of the misrepresentation are pleaded with particularity. Specifically, plaintiff alleges Preferred Carolinas, Allen, and Thorpe represented to plaintiff that the Eichorns would likely sign an offer to purchase the property if he would agree to make additional improvements to the property. Plaintiff contends this constituted a false representation because the Eichorns previously had signed a contract which erroneously listed Toth Building as the seller. Third, plaintiff identifies the persons that made the alleged misrepresentation.[9] Fourth, plaintiff alleges Preferred Carolinas, Allen, and Thorpe, as a result of the misrepresentation, obtained plaintiff's agreement to make the improvements to the property.

The court has not found any mention in the complaint of the place where the alleged

---

[9] In the complaint, as noted, plaintiff "sometimes" refers to Preferred Carolinas, Allen, Jim Allen Group, Thorpe, and "other agents" collectively as "Preferred Carolinas." In addition, he alleges that at all relevant times, "Preferred Carolinas acted by and through" its agents, including Allen, Jim Allen Group, Thorpe, and "other agents." In pleading fraud, plaintiff alleges that "[t]he aforesaid actions of Preferred Carolinas, Allen, and Thorpe amounted to false representations and failure to disclose material facts, reasonably calculated to deceive." Plaintiff thus alleges that Allen and Thorpe, at the least, made the alleged misrepresentations described in the factual allegations section of the complaint. However, because the complaint defines "Preferred Carolinas" to include each of the remaining defendants, it appears the liability of defendants Preferred Carolinas and Jim Allen Group can only derive from the actions of Thorpe and Allen. The court notes that "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." Solomon v. PNC Mortg. Co., No. 5:13-CV-421-FL, 2013 WL 4461538, at *3 (E.D.N.C. Aug. 20, 2013) (internal quotation marks omitted); see also Juntti v. Prudential-Bache Secs., Inc., No. 92-2066, 1993 WL 138523, at *2 (4th Cir. May 3, 1993) (per curiam) ("Further indicative of the insufficiently particular character of the complaint is its impermissible aggregation of defendants without specifically alleging which defendant was responsible for which act."). Plaintiff's pleadings effort just barely make it over this line.

misrepresentation occurred. However, the court determines that plaintiff has pleaded the fraud claim with sufficient particularity to serve the purposes of Rule 9(b). See Harrison, 176 F.3d at 784 (describing purposes of Rule 9(b)).

In Harrison, the court held:

> A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [he] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.

Id. Here, the court is satisfied that both of these criteria have been met. Next, the court will consider whether plaintiff has alleged sufficient factual matter to survive a motion for judgment on the pleadings.

Plaintiff has alleged sufficient factual matter with respect to the actual fraud claim to survive the motion. First, he specifies the allegedly false representations Preferred Carolinas, Allen, and Thorpe made. He alleges they were material as he relied on them in deciding to make the improvements to the property. Next, the second and third elements of fraud – reasonably calculated to deceive and made with intent to deceive – concern Preferred Carolinas, Allen, and Thorpe's state of mind and reasonably can be inferred from the facts. See Calloway v. Wyatt, 246 N.C. 129, 133 (1957) (determining intent to deceive may be inferred from factual allegations). Third, the question of whether plaintiff's reliance was reasonable is a question for the trier of fact. Finally, plaintiff has pleaded the last element of fraud where he has alleged he incurred costs to make the requested improvements to the property.

The remaining defendants contend plaintiff failed to allege any facts regarding the fourth element, namely that he was deceived. They describe the alleged misrepresentations as concerning the ownership of the property and the alteration of the purchase contract. They contend these

22

alleged misrepresentations were made to the Eichorns, not plaintiff. However, the remaining defendants appear to misapprehend the substance of plaintiff's factual allegations against them.

In particular, plaintiff alleges Preferred Carolinas, Allen, and Thorpe's statement that the Eichorns "would likely sign an offer to purchase [the property] if he would accede to certain additions or modifications to his original building plans for [the property]" was false because the Eichorns previously had signed a contract, albeit an unenforceable one.[10]

In sum, the court finds that plaintiff has pleaded the actual fraud claim with sufficient particularity as required by Rule 9(b). In addition, the complaint contains sufficient factual matter related to the actual fraud claim to withstand a motion for judgment on the pleadings. As a result, the court denies the remaining defendants' motion with respect to the actual fraud claim.

In addition, plaintiff has alleged sufficient factual matter to withstand the remaining defendants' motion as to the constructive fraud claim. First, he has sufficiently pleaded facts regarding the existence of a relationship of "trust and confidence." Watts, 317 N.C. at 116 (quotation omitted). "[T]he law presumes a confidential relationship of trust exists if certain fiduciary relationships are present." Orr v. Calvert, 212 N.C. App. 254, 270 (Hunter, Jr., J., dissenting), rev'd per curiam for reasons stated in dissent, 365 N.C. 320 (2011). The agent-principal relationship is a fiduciary relationship that creates the presumption of a confidential relationship of trust. Id. Plaintiff has sufficiently pleaded facts regarding the existence of an agency relationship between himself and the remaining defendants. See Kim v. Prof'l Bus. Brokers Ltd., 74 N.C. App.

---

[10] To the extent plaintiff contends the allegedly fraudulent documents were used to deceive him and extract advantage in the state court proceeding, his contention fails. The complaint alleges the Eichorns used the fraudulent documents as leverage in the state court proceeding. However, these allegations were not made against the remaining defendants. Moreover, plaintiff indicates he knew about the fraudulent nature of these documents prior to the filing of the lis pendens and the state lawsuit. Thus, plaintiff could not have been deceived to acquiesce to demands of either the Eichorns, Preferred Carolinas, Allen, or Thorpe related to the state court proceeding.

48, 51-52 (1985) ("It is now well settled that a broker representing a purchaser or seller in the purchase or sale of property owes a fiduciary duty to his client based upon the agency relationship itself."). Finally, he has sufficiently pleaded facts regarding the consummated transaction in which the remaining defendants allegedly took advantage of their position of trust to the hurt of plaintiff. See Watts, 317 N.C. at 116. For example, plaintiff alleges the remaining defendants' misrepresentation, as his selling agent, caused him to incur additional costs to make improvements to Lot 19. Accordingly, the court denies the remaining defendants' motion with respect to the constructive fraud claim.[11]

###### 3.      Breach of Fiduciary Duty

Although the elements of a constructive fraud claim and a breach of fiduciary duty claim overlap, each is a separate claim under North Carolina law. See Governors Club, Inc. v. Governors Club Ltd. P'ship, 152 N.C. App. 240, 247-50 (2002), aff'd per curiam, 357 N.C. 46 (2003). To state a claim for breach of fiduciary duty, a plaintiff must allege that a fiduciary relationship existed and that the fiduciary duty was breached. See id. at 248-49; White v. Consol. Planning, Inc., 166 N.C. App. 283, 293-94 (2004), disc. review denied, 359 N.C. 286 (2005). In addition, plaintiff must allege that he incurred actual damages as a result of the breach of fiduciary duty. Laws v. Priority Tr. Servs. of N. Carolina, LLC, 375 F. App'x 345, 348-49 (4th Cir. 2010) (citing Dove v. Harvey, 168 N.C. App. 687, 691 (2005), disc. review denied, 360 N.C. 289 (2006)).

---

[11]  If the remaining defendants can show they did not benefit from the consummated transactions in which they are alleged to have taken advantage of their position of trust, then plaintiff cannot recover on the constructive fraud claim. See Barger v. McCoy Hillard & Parks, 346 N.C. 650, 666 (1997) ("Implicit in the requirement that a defendant 'take advantage of his position of trust to the hurt of plaintiff' is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself."). See also Orr, 212 N.C. App. at 269 (noting the issue of whether defendant benefitted is not a part of plaintiff's case-in-chief, but rather is a part of "defendant's affirmative defense of openness. Where a confidential relationship is alleged to have been abused, the specific benefit question should clearly be a defensive matter.").

As determined above, plaintiff has sufficiently pleaded facts regarding the existence of a fiduciary relationship between himself and the remaining defendants. See Kim, 74 N.C. App. at 51-52 ("It is now well settled that a broker representing a purchaser or seller in the purchase or sale of property owes a fiduciary duty to his client based upon the agency relationship itself."). In addition, plaintiff has sufficiently pleaded facts regarding the remaining defendants' breach of their fiduciary duty. For example, plaintiff has alleged facts related to the remaining defendants' misrepresentation regarding the existence of the Purported Purchase Contract and Altered Purported Contract. See Sutton v. Driver, 211 N.C. App. 92, 100 (2011) ("[A] real estate broker has a duty to make full and truthful disclosure of all known or discoverable facts likely to affect the client."). Finally, plaintiff has alleged he incurred actual damages as a result of the remaining defendants' breach of fiduciary duty. For example, he has alleged he incurred additional costs to make improvements to Lot 19. Accordingly, the court denies the remaining defendants' motion with respect to the breach of fiduciary duty claim.

4.    Negligence and Gross Negligence

North Carolina law requires that "in order to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." Camalier v. Jeffries, 340 N.C. 699, 706 (1995). The Supreme Court of North Carolina has "defined 'gross negligence' as 'wanton conduct done with conscious or reckless disregard for the rights and safety of others.'" Yancey v. Lea, 354 N.C. 48, 52 (2001) (citations omitted). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id. (quotations omitted). "Aside from allegations of wanton conduct, a claim for gross negligence requires that plaintiff plead facts on each of the elements of

25

negligence . . . ."  Toomer v. Garrett, 155 N.C. App. 462, 482 (2002).

Plaintiff has alleged the remaining defendants owed him a duty of care based on the agency relationship between them.  Under North Carolina law, a real estate broker owes his client a duty of care, which has been described as follows:

> As a general rule, a broker who is not a mere middleman, but is employed by a principal to act as his agent in a transaction, is bound to exercise reasonable care and skill, or the care and skill ordinarily possessed and used by other persons employed in a similar undertaking.

Carver v. Lykes, 262 N.C. 345, 354-55 (1964) (internal quotation marks omitted). "[A] real estate broker has a duty to make full and truthful disclosure of all known or discoverable facts likely to affect the client." Sutton, 211 N.C. App. at 100.  Plaintiff has alleged sufficient factual matter with regard to the duty element of a negligence claim.

Plaintiff has alleged the remaining defendants' actions, including modifying the contract by secretly "whiting out" the name of the seller, Toth Building, and substituting plaintiff's forged signature and falsely representing that the Eichorns would likely sign a contract if he agreed to make additional improvements to the property, breached their duty of care.  Plaintiff has alleged sufficient factual matter with regard to the breach of duty element of a negligence claim.

The remaining defendants contend plaintiff has not alleged facts regarding how the alleged harms were proximately caused by the alleged breach of duty.  Proximate cause is:

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

Adams v. Mills, 312 N.C. 181, 192-93 (1984) (internal quotation marks omitted).

Foreseeability is "a requisite of proximate cause," but foreseeability of the "precise form"

of the resulting injury is not.  Hairston v. Alexander Tank & Equip. Co., 310 N.C. 227, 233-34 (1984); see also Adams, 312 N.C. at 193.  "All that the plaintiff is required to prove on the question of foreseeability, in determining proximate cause, is that in the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." Hairston, 310 N.C. at 234 (internal quotation marks omitted).  "A defendant is not required to foresee events which are merely possible but only those which are reasonably foreseeable."  Id.  "Proximate cause is an inference of fact to be drawn from other facts and circumstances."  Id.

> It is only when the facts are all admitted and only one inference may be drawn from them that the court will declare whether an act was the proximate cause of an injury or not.  But that is rarely the case . . . .  Hence, what is the proximate cause of an injury is ordinarily a question for the jury.

Id. at 235 (internal quotation marks omitted).

Plaintiff's allegations pertaining to proximate cause of plaintiff's injuries are sufficient to withstand attack mounted through Rule 12(c).  Plaintiff complains of having to expend resources defending against the lis pendens and state lawsuit, in which two of the remaining defendants were joined with him as defendants.  He complains about having to file for bankruptcy protection.  He complains about incurring costs associated with improvements to the property based on the remaining defendants' alleged wrongdoings.  The loss of the use and benefit of Lot 19, because of the actions of the remaining defendants, is a repeated refrain.  Without commenting on the likelihood of his success in proving damages, plaintiff has alleged sufficient factual matter regarding the proximate cause element, with respect to the alleged harms suffered, to survive this motion.

In sum, the complaint alleges sufficient factual matter to survive the remaining defendants' motion with respect to the negligence claim.  Accordingly, the court denies the remaining

27

defendants' motion with respect to this claim.

To survive the remaining defendants' motion as to the gross negligence claim, plaintiff must also allege sufficient factual matter regarding how the negligent acts were committed wantonly, that is "needlessly, manifesting a reckless indifference to the rights of others." Yancey, 354 N.C. at 52. Plaintiff has alleged sufficient factual matter from which a reasonable inference can be drawn that the remaining defendants' alleged actions were wanton.  For example, allegations of "whiting out" the name of the seller and substituting plaintiff's forged signature go beyond description of mere negligence and permit the inference of conduct "done needlessly, manifesting a reckless indifference to the rights of others."  Id.  Accordingly, the court also denies the remaining defendants' motion with respect to the gross negligence claim, where plaintiff's allegations are sufficient to survive the remaining defendants' motion.

     5.     Willful and Wanton Conduct

In the context of a claim for punitive damages, which plaintiff has asserted, "willful or wanton conduct" is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm."  N.C. GEN. STAT. § 1D-5(7).  "In determining or defining gross negligence, [the Supreme Court of North Carolina] has often used the terms 'willful and wanton conduct' and 'gross negligence' interchangeably to describe conduct that falls somewhere between ordinary negligence and intentional conduct."  Yancey, 354 N.C. at 52.  However, in the punitive damages context, "'willful or wanton conduct' means more than gross negligence."  N.C. GEN. STAT. § 1D-5(7).

Accordingly, in the punitive damages context, "gross negligence" and "willful or wanton

28

conduct" are two distinctly recognizable causes of action under North Carolina law.  See Jones v. City of Durham, 360 N.C. 81, 85-86 (2005) ("[W]e conclude that while willful and wanton conduct includes gross negligence, gross negligence may be found even where a party's conduct does not rise to the level of deliberate or conscious action implied in the combined terms of 'willful and wanton.'"), withdrawn and superseded on other grounds by 361 N.C. 144 (2006).

Plaintiff has alleged sufficient factual matter with respect to the willful and wanton conduct claim to survive the remaining defendants' motion.  Here, the same conduct noted above, "whiting out" the name of the seller and substituting plaintiff's forged signature, as alleged, permits the inference that the conduct was done consciously and intentionally in "disregard of and indifference to the rights . . . of others."  N.C. GEN. STAT. § 1D-5(7).  Accordingly, the remaining defendants' motion is denied with respect to the willful and wanton conduct claim.

6.    Unfair or Deceptive Trade Practices

"Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. GEN. STAT. § 75-1.1(a).  "In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff."  Dalton v. Camp, 353 N.C. 647, 656 (2001) (citation omitted).  "Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts . . . ."  Hardy v. Toler, 288 N.C. 303, 309 (1975); see also Sutton, 211 N.C. App. at 105 ("[I]t is well established that proof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive trade practices." (internal quotation marks omitted)).

29

Here, plaintiff has alleged that remaining defendants committed unfair or deceptive acts when they, among other things, forged his signature on the purchase contract and represented to plaintiff that the Eichorns "would likely sign an offer to purchase [the property] if he would accede to certain additions or modifications to his original building plans for [the property]." Plaintiff has, as this court has determined, alleged sufficient factual matter with respect to the actual fraud claim based on the false representation. Thus, plaintiff has sufficiently pleaded the first and last elements of an unfair or deceptive trade practices claim with respect to the false representation, namely that the remaining defendants committed unfair or deceptive acts and they proximately caused plaintiff harm in the form of incurring costs to make additional improvements to the property.[12] In addition, plaintiff has alleged sufficient factual matter against the remaining defendants with respect to how the forged contract constituted an unfair or deceptive act and proximately caused harm in the form of defending against the lis pendens and state lawsuit, and entering into bankruptcy.

"'[C]ommerce' includes all business activities, however denominated . . . ." N.C. GEN. STAT. 75-1.1(b). "'Commerce' in its broadest sense comprehends intercourse for the purposes of trade in any form." Sara Lee Corp. v. Carter, 351 N.C. 27, 32 (1999). "The business of buying, developing and selling real estate is an activity 'in or affecting commerce' for the purposes of [N.C.]G.S. § 75-1.1." Governor's Club, Inc. v. Governor's Club Ltd. P'ship, 152 N.C. App. 240, 250 (2002), aff'd per curiam, 357 N.C. 46 (2003). The remaining defendants do not contest plaintiff's allegation that the allegedly unfair or deceptive acts were "in or affecting commerce," and the court finds that

---

[12]   Under North Carolina law, an unfair or deceptive trade practices act claim "stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." Bumpers v. Cmty. Bank of N. Va., 747 S.E.2d 229, 226 (N.C. 2013). Plaintiff has not alleged he relied on the misrepresentation in defending against the lis pendens and state lawsuit or filing for bankruptcy. Thus, the remaining defendants' motion is granted with respect to the unfair or deceptive trade practices claim based on the misrepresentation causing these harms, and plaintiff's claim is dismissed accordingly.

plaintiff has sufficiently pleaded this element.  The actions complained of here concern the manner in which real estate brokers sell real estate, and thus are "in or affecting commerce."  Accordingly, the court also denies the remaining defendants' motion with respect to the unfair or deceptive trade practices claim.

D.    Court's Motion to Withdraw Reference to Bankruptcy Court

Plaintiff previously filed a motion to withdraw reference, which the Eichorns opposed and this court denied.  See Rodgers v. Preferred Carolinas Realty, Inc., No. 5:13-CV-161-FL (E.D.N.C. July 22, 2013).  The court, upon its own motion, revisits the issue whether withdrawal of reference to the bankruptcy court now is appropriate.  The answer to that question is yes, for the reasons given.

Section 157(d) of Title 18 of the United States Code allows this court to "withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court], on its own motion or on timely motion of any party, for cause shown."  28 U.S.C. § 157(d).

> Although "cause" is not defined by statute, courts in this circuit have consistently recognized several factors that govern whether discretionary withdrawal should be granted: (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy proceedings; (3) expediting the bankruptcy process and promoting judicial economy; (4) the efficient use of debtors' and creditors' resources; (5) the reduction of forum shopping; and, (6) the preservation of the right to a jury trial.

Blue Cross & Blue Shield of N. Carolina v. Jemsek Clinic, P.A., 506 B.R. 694, 697 (W.D.N.C. 2014) (citing In re QSM, LLC, 453 B.R. 807, 809-10 (E.D. Va. 2011)).  "[D]iscretionary withdrawal of reference should be determined on a case-by-case basis by weighing all the factors presented in a particular case . . . ."  In re U.S. Airways Grp., Inc., 296 B.R. 673, 682 (E.D. Va. 2003).

Here, the adversary proceeding is non-core.  Accordingly, this factor weighs in favor of withdrawing reference to the bankruptcy court.  The adversary proceeding does not turn on

bankruptcy law; therefore, it will not affect the uniform administration of bankruptcy law. Accordingly, this factor does not favor allowing the adversary proceeding to remain in the bankruptcy court.

Judicial economy will be promoted through withdrawal of reference because the bankruptcy court does not have decisional authority in this case, per 28 U.S.C. § 157(c)(1), and can only submit proposed findings of fact and conclusions of law to this court. This court must review *de novo* those matters in a bankruptcy court's proposed findings and conclusions of law that a party timely and specifically objects to. See 28 U.S.C. § 157(c)(1).

This duplication of judicial resources particularly is salient in this adversary proceeding where this court already has issued at least four orders in review of the bankruptcy court's proposed findings and conclusions of law. Here, withdrawal of reference will facilitate stream-lined and more efficient administration of this adversary proceeding, which in turn will expedite the bankruptcy process. Accordingly, these factors weigh in favor of withdrawing reference to the bankruptcy court. Similarly, the parties' resources can be used more efficiently if the adversary proceeding is withdrawn from the bankruptcy court because the parties will not have to file objections to the bankruptcy court's proposed findings and conclusions of law. Accordingly, this factor weighs in favor of withdrawing reference to the bankruptcy court.

There is no evidence of forum-shopping here. Accordingly, this factor does not weigh either way in this case. Finally, where plaintiff has requested a jury trial, this factor weighs in favor of withdrawing reference to the bankruptcy court.

In sum, this court determines that the relevant factors weigh in favor of withdrawing reference of the instant adversary proceeding to the bankruptcy court. Accordingly, upon the court's

own motion, this adversary proceeding is withdrawn from the bankruptcy court effective immediately.

### CONCLUSION

Upon *de novo* review of the conclusions of law in the bankruptcy court's September 30, 2013, order, where eight claims are stated in the complaint including 1) infliction of emotional distress; 2) fraud; 3) constructive fraud; 4) breach of fiduciary duty; 5) negligence; 6) gross negligence; 7) willful and wanton conduct; and 8) and unfair or deceptive trade practices, on motion for judgment on the pleadings, this court REJECTS the bankruptcy court's conclusion that said motion should not be allowed as to the infliction of emotional distress claim against the remaining defendants.  As to the infliction of emotional distress claim, the court GRANTS the motion for judgment on the pleadings, and the infliction of emotional distress claim now is DISMISSED.

The remaining claims withstand defendants Preferred Carolinas, Allen, Jim Allen Group, and Thorpe's motion for judgment on the pleadings.  Upon further development of the facts and applicable law, as herein set forth, the court's ruling in this part agrees with the bankruptcy court's conclusions that the fraud, constructive fraud, breach of fiduciary duty, negligence, gross negligence, willful and wanton conduct, and unfair or deceptive trade practices claims shall proceed.  The remaining defendants' motion for judgment on the pleadings is DENIED with respect to these seven claims.

Finally, upon the court's own motion, this adversary proceeding is WITHDRAWN from the bankruptcy court effective immediately.  Separate order on scheduling will follow.

SO ORDERED, this the 24th day of June, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge

34